THE POLK COUNTY NATIONAL BANK, A CORPORATION CREATED AND EXISTING UNDER THE NATIONAL BANKING LAWS OF THE UNITED STATES, APPELLANT, *v.* JAMES N. DARRAH, STELLA P. DARRAH, WILLIAM VAN FLEET, F. M. STANSBOROUGH, THE KNICKERBOCKER PHOSPHATE COMPANY ET AL., APPELLEES.

1. Where a party appears by his solicitor before the chancellor upon the final hearing of a cause, and does not object to the hearing, or ask for an enforcement of the rules, he will be considered to have consented to the hearing and to have waived the rules, and assignments of error setting up that the decree was rendered within three days from the filing of the master's report; that the court did not require the master's report to be filed as required by the rules of practice; that counsel had no opportunity to except to the master's report, and that the final decree was rendered before the expiration of one month's time during which the rules of practice require the master's report to remain in the clerk's office, are of no avail on appeal from the final decree.

2. Where D purchases land in his own name but really as the

agent of his wife, and partly with her money, and gives his own notes for the balance of the purchase money due six, twelve and eighteen months after date, and a small interest note due four months after date secured by mortgage on the purchased property, and where D's wife states to the vendor she will pay the first two notes falling due before maturity if the vendor will assign the notes to her, and this proposition is accepted and the notes are assigned to her, in a foreclosure proceeding by the vendor, D's wife being the actual purchaser of the property through her husband, is not entitled by cross-bill to have the notes assigned to her given priority of payment over the notes held by the vendor, but in such a case her notes will be deemed paid, so far as the vendor is concerned, because being the actual purchaser of the property it was her duty to pay them.

This case was decided by Division B.

Appeal from the Circuit Court for Polk County.

### STATEMENT.

On November 21st, 1898, The Polk County National Bank filed its amended bill in the Circuit Court of Polk county against James N. Darrah, Stella P. Darrah, his wife, The Knickerbocker Phosphate Company, a corporation, The Knickerbocker Trust Company, a corporation, and as trustee for Addie M. Francis, and a number of other defendants whose names it is unnecessary for the purposes of this case to mention, alleging that on the 12th of May, 1894, James N. Darrah was justly indebted to complainant in the sum of $24,490.66, and on that day made and delivered to complainant four promissory notes bearing date on that day, three of which notes were each for $8,000.00, and one for $490.66. The $8,000.00 notes

were due respectively six, twelve and eighteen months after date, and the note for $490.66 was payable on September 12th, 1894. The bill alleges that to secure the payment of these several notes the defendants James N. Darrah and Stella P. Darrah executed and delivered to the complainant a mortgage on certain lands in Polk county, Florida, which mortgage was duly recorded on May 14th, 1894. The bill alleges that Darrah and wife on the 12th of May, 1894, conveyed these lands to The Knickerbocker Phosphate Company, and that on the 1st of August, 1894, The Knickerbocker Phosphate Company executed and delivered a trust deed of the lands to The Knickerbocker Trust Company. The bill alleges that the note for $490.66 and $8,000.00 note first maturing have been paid and discharged, but that the other two $8,000.00 notes are due and unpaid, and that the interests of the several defendants are all subordinate to complainant's mortgage. The bill prays for an accounting, for a decree for the amount due on the two $8,000.00 notes, and taxes paid, and in default of payment for a sale, etc. The foregoing contains such of the substance of the bill as it is necessary to mention.

The defendant Stella P. Darrah answered the bill and also filed a cross bill in which she denied that the notes for $490.66 and for $8,000.00 had been paid and discharged, and alleged in substance that she had purchased those notes before maturity from the complainant; that they had not been paid; that she has sold a half interest in the $8,000.00 note to Addie M. Francis; that she had no interest in the mortgaged lands which she and her husband conveyed to The Knickerbocker Phosphate Company, and that she joined in the mortgage and conveyance to clear the title of her right of dower; that The Knicker-

bocker Phosphate Company was the real purchaser of the lands from the complainant in the original bill, and that James N. Darrah, her husband, acted simply as the agent of said company, and as a vehicle for the transfer of the title. The cross-bill further alleges that the two notes purchased by her are secured by the mortgage, and have priority over the other notes held by the complainant, and prays for a decree in accordance with this allegation.

Addie M. Francis filed an answer and also a cross-bill, alleging in substance her purchase of a half interest in the $8,000.00 note from the defendant Stella P. Darrah; that it was unpaid, and was secured by the mortgage executed by Darrah and wife to The Polk County National Bank; that said note has priority over the notes of the complainant, and prays for a decree in accordance with these allegations. Replications were filed and an order made appointing a master to take the testimony and report. The case was heard on the testimony and a final decree made and entered on the 26th of February, 1906, in which it was decreed, first, that the expenses of the suit as taxed by the master with the exception of the attorneys' fees be first paid; second, that Stella P. Darrah be paid the note for $490.66 with interest; third, that Stella P. Darrah and Addie M. Francis be paid the note for $8,000.00 dated 12th of May, 1894, due six months after date, and the interest, making a total of $17,366.65; fourth, that Wilson & Wilson, solicitors for complainant, The Polk County National Bank, be paid $3,443.30 as solicitors' fees next; fifth, that The Polk County National Bank be paid $33,933.00, the amount of its two $8,000.00 notes and interest. In default of payment of these sums a sale of the property was ordered. An appeal from this decree was taken to the June

Term of this court. Any further statement of the facts which may be necessary will be found in the opinion.

*Wilson & Wilson,* for Appellant;

*Gunby & Gibbons* and *J. W. Brady,* for Appellees.

HOCKER, J. (*after stating the facts*) : The first four assignments of error attack the decree because, first, it was rendered within three days from the filing of the master's report; second, because the court did not require the master's report to be filed as required by the rules of practice; third, because the complainant's counsel was given no opportunity to except to the master's report, and, fourth, because the court erred in rendering the final decree before the expiration of one month's time during which the rules of practice require the master's report to remain in the clerk's office for exception.

We do not think the complainant can avail itself of these assignments of error inasmuch as the decree recites that complainant's solicitor, Mr. T. L. Wilson, was present before the chancellor when the case came on for final hearing and the record does not show that he interposed any objection whatever to the hearing, or that he asked for the enforcement of the rules with reference to the master's report. The complainant therefore must be held to have waived the rules and to have consented to the hearing. The remaining assignments question the correctness of the final decree in giving priority of payment to the note for $490.66 held by Stella P. Darrah, and to the $8,000.00 note held by Stella P. Darrah and Addie M. Francis, over the two notes for $8,000.00 each, held by the Polk County National Bank. The facts in regard to the

matters involved are as follows: In March, 1894, James N. Darrah agreed to purchase the lands described in the mortgage of The Polk County National Bank, and on the 12th of May, 1894, he made a cash payment and gave the four notes involved in this case for the deferred payments. He also took a deed to the lands and executed a mortgage on them to the said bank to secure the payment of these notes, in the execution of which mortgage his wife Stella P. Darrah joined. The note for $490.66 was due four months after date and the other three notes were due respectively six, twelve and eighteen months after date. After the purchase of this property in March, Mr. Darrah organized The Knickerbocker Phosphate Company in New York, and after the 12th of May, 1894, transferred the land to that company, which it seems assumed his notes to the bank. Very nearly all the stock of The Knickerbocker Phosphate Company was transferred by James N. Darrah to his wife, and $17,500.00 of its bonds, immediately after the organization of the company. This was in accordance with the original design which Darrah had in buying this property.

It clearly appears from the testimony that he was from the beginning of the enterprise acting for and in behalf of his wife as her agent and with her consent. Exhibits Nos. 11 and 12 to the testimony of James N. Darrah, a witness for Mrs. Darrah, show this. They are as follows:

"Exhibit No. 11 to testimony of James N. Darrah.

In compliance with previous agreements and in pursuance of certain promises made to Stella P. Darrah, and for the purpose of inducing the said Stella P. Darrah to furnish me with such sums of money as may be required, I, James N. Darrah, do hereby promise and agree to use all

money entrusted to me in behalf of and in the interest of Stella P. Darrah and that all negotiations and all contracts entered into by me shall be considered and regarded as being done for her and in her interest; and that in all respects I shall be her agent and act for her, and that whatever interests, rights, benefits, profits and all other advantages accruing and arising out of the contemplated phosphate deal at Bartow, Florida, shall belong to said Stella P. Darrah, to do with as she pleases. And in consideration of such financial aid and assistance and in consideration of one dollar and other good and valuable considerations, the receipt whereof is hereby acknowledged, I do promise, agree and obligate myself to deliver and to make formal and valid transfer for and assignment of all right, title, interest, profits, etc., that may appear to belong to me wherever my name be used for the sake of convenience, to the said Stella P. Darrah upon demand.

Dated New York, February 20, 1894.

James N. Darrah."

"Exhibit No. 12 to testimony of James N. Darrah.

For value received I hereby sell, assign and transfer unto Stella P. Darrah all my right, title and interest in and to the stock and bonds of The Knickerbocker Phosphate Company which were duly ordered to be issued to me by a resolution of the board of directors of said company, at a meeting held on April 30th, 1894, the right, title and interest in said bonds and stock which appear in my name is the amount so named in said resolution, excepting however, eighteen (18) bonds and seventy-five (75) shares of the stock of said company, which have been already sold and assigned to Wm. H. Moore, and also five (5) shares

of stock to each of the following named persons : J. Owen Moore, Byron G. Clark and Wm. F. Holwill.

Dated New York May 1st, 1894.

James N. Darrah."

It further appears that the only consideration Mrs. Darrah gave for the stock and bonds of The Knickerbocker Phosphate Company was money which she let her husband have to make the cash payment to the bank when the property was purchased.

This testimony is in conflict with the allegations of the cross-bill of Mrs. Darrah, in which she states she had no interest in the mortgaged premises.

Just before the maturity of the note for $490.66, James N. Darrah wrote The Polk County National Bank that Mrs. Darrah was ready to take up the note and requested that the bank's claim against this note be assigned to her. The president of the bank on September 10, 1894, by telegram authorized its correspondent in New York, The American Exchange National Bank, to comply with Mr. Darrah's request, and on the 11th of September, 1894, the latter bank executed and delivered to Mrs. Darrah an assignment of the said note without recourse in consideration of the payment of $490.66.

On November 5th, 1894, James N. Darrah wrote to the cashier of The Polk County National Bank asking that the $8,000.00 note about to mature (Nov. 12th) be assigned to Mrs. Stella P. Darrah before maturity. He says, among other things, "If you will consent to this proposition Mrs. Darrah will *pay the note in full,* provided that The American Exchange National Bank, the present owners of the note, will assign their right, title and interest in the note to Mrs. Darrah, and provided also that the amount so

*paid will be endorsed upon the mortgage now held by your bank on the property purchased in my name.* On the 9th of November, 1894, Darrah sent a telegram to Warren Tyler, the cashier of The Polk County National Bank, asking that he wire The American Exchange National Bank to assign the note to Mrs. Darrah on payment. It appears from the testimony of E. W. Codington, the vice-president of the Polk County National Bank, that he answered the last mentioned telegram, and from the testimony of Mr. Tyler, the cashier, that he was absent from the bank at the time. Mr. Codington used Tyler's name and sent the following telegram:

"To American Exchange Nat. Bank,

New York, N. Y.

Assign Darrah note eight thousand to party paying the same.　　　　　　　Warren Tyler, Cashier."

On the 10th of November, 1894, the eight thousand dollar note due on the 12th was transferred by The American Exchange National Bank to Stella P. Darrah without recourse, on the payment by her of the amount of the note and interest. Mr. Codington says that when he sent the telegram to The American Exchange National Bank he had Mr. Darrah's letter of the 5th of November before him and he sent the telegram with the distinct understanding in his mind that the payment would and must stand as a payment on the mortgage. Under these circumstances we have to determine whether these notes are to be considered as paid so far as the mortgage is concerned, or whether by the transfer of them to Stella P. Darrah she has the right to have them considered as secured by the mortgage, and as entitled to priority of payment over the other two $8,000.00 notes held by The Polk County National Bank.

In the case of Brown v. Lapham, 3 Cush. (Mass.) 551, text 554, Chief Justice SHAW *in the opinion* says: "Whether a given transaction shall be held, in legal effect, to operate as a payment and discharge, which extinguishes the mortgage, or as an assignment, which preserves and keeps it on foot, does not so much depend upon the form of words used, as upon the relations subsisting between the parties advancing the money, and the party executing the transfer or release, and their relative duties. *Gibson v Orehore,* 3 Pick. 475.

If the money is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the mortgage, and relieve the mortgaged premises of the lien, a duty in the proper performance of which others have an interest, it shall be held to be a release, and not an assignment, although in form it purports to be an assignment." This doctrine is reaffirmed in Carlton v. Jackson, 121 Mass. 592, and is quoted and applied in Burnham v. Dorr, 72 Me. 198. In the case of Langdon & Scofield v. Keith, 9 Vt. 299, it is held: "When all the notes secured by a mortgage are assigned the mortgage passes with them, but when a part only are assigned, whether the whole mortgage or a proportionate part or any interest therein is assigned depends on the real contract and actual agreement of the parties." In Rolston v. Brockway, 73 Wis. 407, it is held: "The holder of a mortgage may transfer by endorsement one of several promissory notes secured thereby, without passing any interest in the mortgage where that is the agreement between the parties;" and, "such an agreement may be evidenced by a memorandum upon the mortgage to the effect that the note negotiated has been 'paid in full' and proof that such memorandum was made by the mortgagee

at the time of the transfer in presence of the endorsee and with his knowledge and assent."

It appears from the testimony of Mr. Tyler, the cashier of The Polk County National Bank, that the payment of the $8,000.00 note was credited on the mortgage, but he does not recollect clearly at what time it was made.

The general rule adopted by this court in regard to the priority of notes secured by the same mortgage is found in the case of Wilson v Hayward, 6 Fla. 171. It is stated thus: "In case of a mortgage to secure notes payable at different periods the note which first falls due has the prior right to be satisfied out of the mortgaged property, unless there is some peculiar equity attached to the notes of subsequent date, and so as to the other notes." Of course if such peculiar equities do exist, this rule does not apply. The appellees contend that the Polk County National Bank intended by the assignment of these notes to Stella P. Darrah to give her the priority over the other two notes held by The Polk County National Bank, and they lay some stress on a letter written by cashier Tyler to W. R. Oglesby of New York. The letter is as follows:

"Bartow, Fla., Dec. 21, 1894.

Woodson R. Oglesby, No. 87 Nassau St., N. Y. City, N. Y.

Dear Sir: Replying to yours of the 18th at hand I will state that the $8,000.00 note and interest $400.00 total $8,400.00 was paid in full on the 10th Nov. by Stella P. Darrah, and the note and a proportionate part of the mortgage was assigned to her without recourse to us or The American Exchange National Bank, which then held the note. The exact nature of the assignment executed by the Am. Exch. Nat. Bank we do not know, but if necessary we can ascertain it.

Trusting this information will be satisfactory, I re-
main,                              Yours very truly,
                                        Warren Tyler."

In explanation of this letter Mr. Tyler states that he
was not in the bank when the telegrams were sent in re-
gard to assigning the note to Mrs. Darrah, and that when
he returned to the bank the transaction was closed, and
that his letter to Oglesby was based on information ob-
tained from the teller, Mr. Huddleston, and upon the lat-
ter's recollection of what occurred with Mr. Codington
when the telegrams were sent; that he did not refer the
matter to Mr. Codington as he was not in at the time, and
that he never saw the telegrams until after this suit was
brought. He further states that neither James N. Darrah
or Stella P. Darrah ever requested any other assignment
of the note, or proportionate part of the mortgage than
was contained in the letter of James N. Darrah, and in
that letter Darrah requested that the amount paid be
credited on the mortgage, and that this was done on re-
ceipt of information from New York that the amount had
been paid.

This letter of Tyler's, written to Oglesby some time after
the transaction was closed and without acquaintance with
the real nature of the transaction, cannot, we think, be
held to alter the nature of that transaction which was con-
ducted and completed in his absence by Mr. Codington.
It seems to us that in paying these two notes, Stella P.
Darrah did nothing more than it was her duty to do. The
property was bought by her husband and agent for her
benefit, and these notes represented part of the purchase
money. In his letters and telegrams with reference to
these notes Darrah speaks always of his wife's purpose to

*pay* them. It is true he wishes them assigned to her, but so far as The Polk County National Bank is concerned, they are to be paid. It seems to us that what he must have had in mind was an assignment that would enable Stella P. Darrah to hold the notes against The Knickerbocker Phosphate Company, to which corporation the mortgaged real estate had been conveyed subject to the mortgage. To hold that the notes were not paid so far as The Polk County National Bank is concerned, but were simply assigned, if the mortgaged property should prove insufficient to pay all the notes would result in the injustice of causing the bank to lose a large part of the purchase money of the property and the turning it over to the purchaser without any equivalent. We do not think the evidence warrants so inequitable a construction of the transaction. Taking the whole case into consideration we are of the opinion that the decree is erroneous in holding that the notes held by Mrs. Darrah were not paid as far as The Polk County National Bank is concerned, and in giving them priority over the notes held by the bank. This also applies to the interest of Addie M. Francis, as she purchased that interest in the $8,000.00 note after its maturity and of course subject to equities.

The decree appealed from is reversed and the case is remanded with directions to the court below that a decree be entered in favor of The Polk County National Bank, according to the prayer of its bill.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and WHITFIELD and COCKRELL, JJ., concur in the opinion.