CLERMONT-MINNEOLA COUNTRY CLUB, INC., *Appellant*, vs. THEODORE P. LOBLAW, et al., *Appellees*.

143 So. 129.

En Banc.

Opinion filed July 8, 1932.

*T. T. Cork,* and *Touchton, Mitchell & Crittenden,* for Appellant;

*J. W. Hunter,* for Appellees.

ANDREWS, Commissioner.—This cause is here upon appeal from the Circuit Court of Lake County from that portion of the final decree rendered in favor of the counter-claim of the Consolidated Paving Company interposed in the mortgage foreclosure proceeding instituted herein by Clermont-Minneola County Club, Inc.

In substance the essential facts are that Mrs. Ella M. Johnston, a married woman (not then being a free dealer), on August 28, 1923, purchased from A. B. Connor and wife certain lands in Lake County as her separate property, and in the deed of conveyance assumed and agreed to pay a first mortgage of $19,740.00, held by C. H. Wilson and wife given by A. B. Connor and wife, as part of the purchase price, payable in eight equal annual installments with interest, evidenced by notes, the first of which had been paid at the time of said conveyances; that during her ownership, Mrs. Johnston joined by her husband, executed and delivered to the Cox & Bryson Paving Company (afterwards reorganized as the Consolidated Paving Company) a second lien upon the same property agreeing to pay said paving company $4,317.70 for construction of sand-clay hard surfaced roads through said property which was subdivided into building lots and a golf course; that on January 4, 1927, Mrs. Johnston joined by her husband, deeded said premises (not already sold off in lots) to Dr. Percy T. Coupland and wife, who in said deed likewise assumed and agreed to pay the balance of said first mortgage, and also agreed in said deed to pay the lien of the Cox & Bryson Paving Company; that after Mrs. Johnston had so divested herself of the legal title, she received payment in full of "something over $38,000.00" for her equity in the lands from the proceeds of a foreclosure of her second mortgage executed by the said Percy T. Coupland and wife who, it appears, never paid off the remainder of the first mortgage nor the said lien for paving held by the Cox & Bryson Pav-

ing Company; that on April 28, 1930, she purchased with her own funds the said first mortgage (then reduced to $12,642.48) which was however assigned by the holder to' the Clermont-Minneola Country Club, Inc., then being organized by Mrs. Johnston who issued stock in the Company to herself, her husband, daughter and son-in-law; that after the mortgage had been assigned, at the direction of Mrs. Johnston, to the Complainant Clermont-Minneola Country Club, Inc., the latter filed foreclosure proceedings against the property involved, except thirteen lots which she had become owner of in her own name, and made the Cox & Bryson Paving Company, among others, one of the defendants, also named as defendants Mr. and Mrs. Johnston.

The Consolidated Paving Company filed their answer, in due course, in which it is alleged that of the sum of $4,-317.70, agreed to be paid it by Mrs. Johnston for constructing the sand-clay roads through the property, that only $2,000.00 had been paid. The answer further states that the work performed by said paving company was duly accepted by Mrs. Johnston; that it constituted a permanent improvement and a lien upon said lands, and that the said lien had been duly filed and recorded in the public records of Lake County; that although Mrs. Johnston had been paid the full price for her equity in the property she had failed and refused to pay the Defendant the balance due on said lien for paving.

The answer further states that prior to April 28, 1930, Mrs. Johnston and her husband for the purpose of defrauding the Defendant Paving Company, and for the purpose of destroying said lien, had fraudulently formed an alleged corporation known as the Clermont-Minneola Country Club, Inc., (Appellant) in which they held all shares of stock except one share each given their son-in-law and daughter Mr. and Mrs. Linbaugh; that the said assignment of said mortgage to the said corporation by the direc-

tion of Mrs. Johnston was a mere subterfuge for the purpose of defrauding the defendant paving company and an attempt to evade payment of the amount remaining due under said lien. The Court allowed said defendant to file an amendment to the answer which in substance asked that an accounting be had for the purpose of determining the amount due the said paving company and that said amount so found be declared to be a lien upon the described property superior to the mortgage, and that it be paid before any other payments shall be made to complainant under said foreclosure proceeding, and that the Defendant be granted such other and further relief as the Court may deem proper.

Thereafter a motion was made by the Complainant to strike several paragraphs of the answer, including that portion setting up the counter-claim, on the grounds that it did not set up any defense to the bill of complaint, nor any facts that would show that the defendant has been prejudiced or damaged by any of the transactions therein set up or complained of, and does not show any facts that would alter the priority of the lien of said mortgage sought to be foreclosed.

When the above motion came on for hearing it was denied by the Court, and thereupon a replication to the said answer was filed by the Complainant; and upon the issues thus made testimony was duly taken which resulted in a final decree being rendered sustaining the contention of the defendant paving company by making its claim a lien superior in dignity to that of said mortgage and requiring its claim to be first paid from the proceeds of the foreclosure sale. From this final decree an appeal was taken by Complainant, and the cause is here for review.

Only the First and Third Assignments of Error are insisted upon here. The First is directed to the denial of the motion of complainant to strike designated portions of

the answer, which included the affirmative answer setting up the counter-claim of the defendant paving company; the Third Assignment is directed to that portion of the decree adjudicating that the said lien of the Consolidated Paving Company became a prior encumbrance to the mortgage lien being foreclosed by complainant.

It is observed that three of the paragraphs which complainant moved to strike from the answer of the defendant as not setting up any defense to the allegations of the bill of complaint, merely allege that defendant neither admits nor denies" certain designated paragraphs of the bill and "demands strict proof thereof."

Section 4904 (3118) C. G. L. 1927, (Sec. 34 Chap. 14658 Acts of 1931), requires the answering defendant to either specifically (1) admit, or (2) deny, or (3) explain the facts upon which the defendant relies, "unless the *defendant is without knowledge*, in which case he shall so state, such statement operating as a denial." This court, in the case of Bostwick v. Van Sant, 98 Fla. 565, 124 So. 14, held that:

"It is not sufficient merely to state that he 'neither admits nor denies.' He must, as to all material allegations either admit them, or, if he has no knowledge of the facts alleged, he may disclaim such knowledge and require strict proof if he so desires."

If a defendant undertakes to answer any material allegation of the bill, he is required to make it full, true and direct, and failing to do so, the effect may be the same as to omit it.

Where a defendant in his answer avers that he "neither admits nor denies" a stated material allegation of a bill of complaint but "demands strict proof," it is equivalent to no answer, and is therefore subject to a motion to strike. If he is "without knowledge," he *must so state* and in such event it operates as a denial and may thus require proof on the part of complainant. In substance, therefore, any

ground of an answer which "neither admits nor denies" a material allegation of a bill cannot call for strict proof, and may be treated as no denial of the allegation. The Court did not commit reversible error, however in failing to strike those grounds under the circumstances as there is in effect no denial, and no allegation of lack of knowledge being made no proof is required by complainant.

In support of the First Assignment of Error Appellant also contends in substance that the matter set up in defendants' counterclaim does not arise out of nor is it connected with the subject-matter of the original bill as required by statute, so as to enable the defendant to raise such an issue by way of set-off or counterclaim in this proceeding.

The statute referred to (Section 4906, C. G. L., 1927) provides that:

"The answer must state, in short and simple form, any counter-claim *arising out of the transaction which is the subject matter of the suit,* and *may,* without cross-bill, set out any set-off or counterclaim against the plaintiff which might be the *subject of an independent* suit in equity *against him,* and such set-off or counter-claim, so set up, shall have the same effect as a cross-suit, so as to enable the court to pronounce a final judgment in the same suit both on the original and cross-claims." (Italics ours).

It is observed that the seventh paragraph of the bill of complaint makes the said paving company a party defendant alleging that it "has or claims some lien upon or some interest in said premises by virtue of an agreement made by the Cox & Bryson Paving Company with the defendants, Ella M. Johnston and George B. Johnston her husband," . . . . . but that such claim "is subsequent in date and inferior in rank" to that of complainant. The answer of defendant paving company alleges reasons why it contends that said mortgage of complainant should be superior to the lien of the defendant. It is thus seen that one of the

issues in the instant case was whether or not the said mortgage was superior or inferior in dignity to the lien of the defendant paving company.

In the case of Turner et al v. Utley, et al., 93 Fla. 910, 112 So. 837, this Court held that under section 3120, Revised Gen. Statutes of 1920 (Sec. 4906 C. G. L., 1927), "The cause of action pleaded in such counter-claim must be of equitable cognizance, and as was the case with the cross-bill must set up matters arising out of or connected with the subject matter of the original bill and germane thereto, or must set out matters arising out of the transaction which is the subject matter of the suit."

For other recent cases fully discussing the application of counter-claims under the above statute, see Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 St. 473; Farrell v. Forrest Investment Co., 73 Fla. 191, 70 So. 216, 1 A. L. R. 25; Lovett v. Lovett, 93 Fla. 611, 112 So. 768; Turner v. Utley, 93 Fla. 910, 112 So. 837; Levitt v. Axelson, 102 Fla. 233, 135 So. 553; Tilton v. Horton, 103 Fla. 497, 137 So. 801; Norris et ux. v. Eikenberry, 103 Fla. 104, 137 So. 128.

The counter-claim here set up by defendants is shown to have arisen out of the transaction which is "the subject matter of the suit," namely,—the foreclosure of the first mortgage, in which proceeding it is sought to subordinate the mortgage lien of defendant counter-claimant. The Court committed no error in refusing to strike that portion of the answer.

Under the Third Assignment of Error an important question arises in this case as to whether the alleged or purported assignment of the said mortgage to Mrs. Johnston, a married woman, may operate, under the conditions and relationship existing between the respective parties, as a discharge of the first mortgage *as to the defendant paving company,* where it is shown that the money was paid by

Mrs. Johnston personally but the written assignment names the corporation *as the assignee.*

It is noted that Mrs. Johnston in her testimony admits that she purchased the property in the first instance with her own money, and that she later paid her own money for the Wilson first mortgage and notes which she caused to be assigned to the Clermont-Minneola Golf Club, Inc., organized by her, in which she and her husband are practically the only stockholders.

She also admits in her testimony in this case that she purchased the tax certificates on this same property upon which tax deeds were issued to the same corporation and are now being foreclosed in the companion case of Clermont-Minneola Country Club, Inc. v. Coupland, et al., filed this term.

In the recent case of Minnie A. Sumner, et al v. Osborne, et al., 101 Fla. 742, 135 So. 513, a similar issue to that in the instant case was presented and the facts as given in the opinion were in substance that Minnie A. Sumner, a married woman, took title to certain property subject to a first and second mortgage both of which she, as grantee, "assumed and agreed to pay." Later she, joined by her husband, conveyed the property to one Currington subject to the two mortgage liens. The first mortgage was then assigned to her and subsequently she filed suit to foreclose it and joined as a party defendant to the suit one Berton Grantham, the holder of the second mortgage.

The defendant, Grantham, in his answer, set up and contended that the assignment to Mrs. Sumner of the first mortgage operated as a discharge *as to his second mortgage* in that the monies paid for the assignment were merely in payment and discharge of the mortgage lien which she had agreed to pay under the deed made to her in the first instance. A final decree was entered wherein the Court made a finding that the said assignment to Mrs. Sumner was "as

between her and the Defendant Berton F. Grantham" a satisfaction of the first mortgage indebtedness, and that the mortgage of the said Grantham thereupon became a first lien upon the property in question. Upon appeal it was held that the said assignment to Mrs. Sumner under the circumstances operated as a discharge as to the second mortgage, and cited, among other cases, that of Polk National Bank v. Darrah, 52 Fla. 581, 42 So. 323, which case quotes from Section 6672 (4786), Compiled General Laws of 1927, which provides that

"A negotiable instrument is discharged:

"I.  By payment in due course on behalf of the principal debtor. . . . . . .

"5.  When the principal debtor becomes the holder of an instrument, at or near maturity, in his own behalf."

In the above Sumner case, the following principles were stated in headnotes 1 and 2:

"Whether a paper purporting to be an assignment of a mortgage shall be held an assignment which preserves and keeps the mortgage alive or, in legal effect, to operate as a payment and discharge, which extinguishes the mortgage, does not so much depend upon the form of words used, as upon the *relations between the parties advancing the money,* and the party executing the transfer or release, and their relative duties."

"If money paid to the owner of a first mortgage is advanced by one whose duty it is, by contract or otherwise, to pay and cancel the first mortgage and also a second mortgage, and relieve the mortgaged premises of the lien of the first mortgage, a duty in the proper performance of which the second mortgagee has an interest, the payment thereof shall be held, as to the maker of the first mortgage and as to the second mortgagee, to be a release and not an assignment, although an instrument in form purporting to be an assignment is given to the one so advancing the money."

The only difference between the essential facts shown in the Sumner case and those of the instant case are, (1) in

the Sumner case the married woman, grantee, assumed and agreed to pay the first and a *second* mortgage encumbering the property, while in the instant case Mrs. Johnston, a married woman, assumed and agreed to pay a first mortgage, but she (joined by her husband) *while she owned the property,* executed a contract to pay for improvements which by its terms constituted a "mortgage lien' thereon; (2) in the Sumner case the first mortgage which Mrs. Sumner agreed as grantee in the deed to pay, was assigned to her personally upon paying her own money therefor and she subsequently brought suit *in her own name* joined by her husband, to foreclose; while in the instant case Mrs. Johnston, though paying her own money therefor, the assignment of the first mortgage was made to the Clermont-Minneola Country Club, Inc., which she had organized for that purpose, and suit was brought *in its name* to foreclose.

We are of the opinion that the payment made by Mrs. Johnston for the first mortgage in effect operated as a release of its priority in so far as the lien of the defendant paving company was concerned, even though the instrument in form purported to be an assignment *to the corporation,* it being shown that the corporation was organized by Mrs. Johnston who furnished the money to purchase said assignment, for the purpose of taking title. See Sumner v. Osborne, supra; Blood v. Hunt, 97 Fla. 551, 557; 121 So. 886-896; Virginia-Carolina Chem. Co. v. Fisher, 58 Fla. 377, 50 So. 504.

The decree in the instant case does not purport to hold Mrs. Johnston "personally" liable for the amount still due on the defendant's lien, but that the property is liable first for the paving mortgage lien, *which she executed* while owner, as against the first mortgage being foreclosed which she had, when she purchasing the property, agreed to pay. Whether she was "personally' liable or not does not matter

here if the fact remains that *in so far as appellee is concerned*, she "paid" it.

One of the contentions of Appellant is that it is subrogated to all the rights of the mortgagee from whom the mortgage was purchased. It may be that Mrs. Johnston would be "legally subrogated" to the rights of the Wilsons from whom she bought the mortgage, *except* as to the Defendant Paving Company whose mortgage lien she executed as owner of the property whereby the improvements were constructed which enured greatly to her benefit by enhancing the value of the property at a time when she sold it and received full payment for her equity.

"Legal subrogation" arises by operation of law where one having liability, right or fiduciary relation pays a debt due by another under circumstances equitably entitling him to the security held by the creditor; but "equity will not apply the principle of subrogation, where to do so would deprive a party of a legal right." Marianna Nat. Farm Loan Assn. v. Braswell, 95 Fla. 510, 116 So. 639; Boley v. Daniel, 72 Fla. 121; 72 So. 644, L. R. A. 1917A, 734.

In the recent case of Hartman v. Pool, 103 Fla. 858, 139 So. 589, this Court in passing upon a very similar issue to the one here involved held that:

"A subsequent purchaser of mortgaged property, whether a married woman or not, who assumes the payment of prior existing mortgages upon property that such subsequent purchaser buys, as a part of the purchase price of such property, is estopped to defend against the foreclosure of such mortgage upon any ground. See Key West Wharf & Coal Co. v. Porter, 63 Fla. 448, 58 So. 599, Ann. Cas. 1914A, 173. In such cases, the estoppel which is recognized in cases of this character, and the reasons for it are as much applicable on principile to married women a to other subsequent purchasers under like circumstances."

Upon the same theory the Complainant who paid or pur-

chased such first mortgage which she had assumed and agreed to pay, would, in a suit to foreclose it, be "estopped to defend against" the *superiority* of such (second mortgage" debt set up as a counter-claim, which she had likewise as owner pledged the property as security to pay.

It is a fundamental principle of law that a person will not be permitted to do indirectly what he is not permitted to do directly. Under this principle, the property would not be permitted to escape the legal effect of the mortgage "assignment," for which Mrs. Johnston admits having furnished the funds, by merely having it assigned to a corporation which was apparently organized by her for the purpose of taking title as it does not so much depend upon the form of the transaction actually used to hinder, delay or defraud creditors, as it does upon the relation existing between the party advancing the money, the party taking title, and the parties affected by the transaction.

The transactions in regard to this mortgage assignment also have a bearing upon the tax certificates and tax deeds which Mrs. Johnston handled in substantially the same manner, which is submitted as the companion case now here for review upon appeal.

Finding no reversible error, the decree of the trial court is affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below be, and the same is hereby, affirmed.

BUFORD, C.J., AND WHITFIELD, TERRELL, BROWN AND DAVIS, J.J., concur.

ELLIS, J., not participating.