KATHARINE S. BAUMAN, a Widow, v. J. E. HEALY, NORWOOD ANDREWS, et ux., JOHN P. JAEGER, Single, and OLIVER P. SEARING, et ux.

193 So. 773
Special Division B
Opinion Filed May 30, 1939
On Rehearing November 21, 1939
Second Petition for Rehearing Denied February 16, 1940

*Henry K. Gibson* and *Murrell & Malone,* for Appellant; *H. V. Whitehurst, Carl T. Hoffman* and *L. L. Robinson,* for Appellee.

PER CURIAM.—This is an appeal from a final decree in favor of the plaintiff below foreclosing a certain mortgage executed by Norwood H. Andrews and wife on June 22,

1925, to the plaintiff, J. E. Healy, to secure the payment of three promissory notes in the sum of $1,166.66 each due in one, two and three years after date together with interest thereon at the rate of 8 per cent per annum, which mortgage was duly filed for record on July 26, 1925, and encumbered two lots in Atlantic Heights Subdivision located in Dade County. The bill alleged that no part of the aggregate principal sum of $3,500.00 had been paid. The bill named as parties defendant Norwood Andrews and his wife; John P. Jaeger, a single man; Katharine S. Bauman, a widow, and Oliver P. Searing and wife. Paragraph 10 of the bill of complaint reads as follows:

"Plaintiff alleges further and says that the said Oliver P. Searing who is made a party defendant to this suit was on the 7th day of December, A. D. 1930, the owner and holder of one certain first mortgage encumbering the property herein sought to be foreclosed, which said mortgage was made and executed by the plaintiff, J. E. Healy, and his wife, to said defendant, Oliver P. Searing. That the said Oliver P. Searing did on December 7, 1930, cause to be obtained a tax deed on the property herein described, by and through the defendant, John P. Jaeger. That the defendant, Oliver P. Searing did on December 8, 1930, cause and had the said John P. Jaeger, a single man, to execute and deliver a special warranty deed to Katharine S. Bauman, a widow, herein made defendant, who is the sister of the said defendant, Oliver P. Searing. That in truth and in fact, the said Oliver P. Searing was then and is now the owner of said tax deed, although it was obtained in the name of the said John P. Jaeger; and that the said defendant, Oliver P. Searing, while the owner and holder of said first mortgage and notes made by the plaintiff and his wife, did bring suit upon the promissory notes against your plaintiff by common-law action and compelled your

plaintiff to pay and satisfy said notes and mortgage, and at the same time the said notes and mortgage were satisfied by the plaintiff, the said Oliver P. Searing owned and controlled the said tax deed obtained on said property and on which the said Oliver P. Searing held a first mortgage which has now been paid and satisfied by the plaintiff.

"Whereof, plaintiff alleges and says that the defendants, John P. Jaeger, a single man, and Katharine S. Bauman, a widow, are not bona fide holders and owners of the said tax deed and special warranty deed; and that the said interest so held by them in said property should be set aside and held for naught, and declared to be inferior to the plaintiff's rights, title and interest in the property herein sought to be foreclosed, by decree of this honorable court."

"Plaintiff hereby offers to tender into the registry of this court the sum of money so expended by the said defendants in obtaining said tax deed, in accordance with the laws made and provided in such cases."

The defendants Oliver P. Searing and his wife, Marie H. Searing, Katharine S. Bauman and John P. Jaeger all filed separate answers and motions to dismiss the bill.

The further history of the case, both as to the pleadings and the facts, and his conclusions as to the facts and the law of the case, are so clearly and succinctly stated in the report of the special master, Hon. T. J. Dowell, who was appointed in the case, that we will quote in part from such report, as follows:

"In short, the answer of Marie H. Searing, the wife of Oliver P. Searing, merely disclaims knowledge as to every material allegation in the bill and concludes with a motion that said bill be dismissed upon the ground that defendant, John P. Jaeger, was a tax deed holder and the defendant, Katharine S. Bauman, was his successor in title and that

therefore a tax title owner is not a proper defendant in a mortgage foreclosure.

"In his answer, Oliver P. Searing states that he is without knowledge concerning the allegations set forth in paragraphs 3, 5, 6, 7, 8 and 9. He further denies all the allegations of paragraph 10 except admitting that he brought a common-law action against plaintiff on the promissory notes which had been given him, as a part of the purchase price when the lots in question were originally purchased by plaintiff in this action. In further answer to the allegations of paragraph 10 of the bill this defendant states that he was never acquainted with the defendant, John P. Jaeger; that he knew in the latter part of the year 1930 that a tax deed was about to be issued; that he requested the clerk of this court to hold off the issuing of such deed until he could secure the money and redeem the property. That he was informed by said official that the issuance of said tax deed could not be put off; and that, under such conditions, he thereupon induced his sister, the defendant, Katharine S. Bauman, to purchase the property from the defendant Jaeger, and to take title to said property by securing a special warranty deed from said defendant Jaeger. That, thereupon, Mrs. Bauman, who is his sister, took his advice and for a valuable consideration secured a special warranty deed from the said defendant Jaeger, under date of December 8th, 1930. That since December 7th, 1930, when the tax deed was issued to the defendant, Jaeger, he had not claimed any right, title or interest in or to the premises described in the bill of complaint. That the money used to secure the special warranty deed was furnished solely by his sister, Mrs. Bauman, who is now the bona fide owner of the premises. That upon securing the delivery of the special waranty deed, as agent for Mrs. Bauman, and, acting in her behalf, he went upon and took

possession of the premises, and planted shrubs and trees thereon and in addition posted the premises and caused posts to be erected in each corner thereof. His answer concludes with a motion to dismiss the bill upon the ground that the defendant John P. Jaeger was a tax deed holder and defendant, Katharine S. Bauman, was his successor in title, and that therefore a tax title owner is not a proper defendant in a mortgage foreclosure action.

"In her answer the defendant Mrs. Bauman denies that the mortgage herein sought to be foreclosed is an encumbrance on the real estate therein described. She claims that she has a title paramount and superior to the claim of plaintiff or any one else. In answer to paragraph 10 she admits she did know that her brother, the defendant, Oliver P. Searing, had some interest in said real estate many years ago. She denies that her said brother caused a tax deed to be obtained and further denies that he was ever the owner of such tax deed. She disclaims any knowledge concerning a common-law action brought by her brother against the plaintiff in this cause, whereby the notes and the first mortgage originally held by him to secure the payment of same had been satisfied. She says that in securing the special warranty deed from the defendant Jaeger, her said brother had no personal negotiations with said Jaeger, but the deed in question was in fact secured through the good offices of the clerk of this court. That she was never personally acquainted with said Jaeger. She then alleges that upon securing the deed in question she directed her brother to take all steps necessary to perfect her title and that it was under her directions that her said brother planted trees upon the property, posted the same in her name and caused posts to be placed at each of the four corners of the two parcels of land. That, thereafter, she paid taxes upon the property, the exact amount thereof

being unknown to her. Her answer concludes with a prayer that the bill be dismissed and that a decree be entered adjudging her to be the owner of the property described in the bill of complaint free from any liens, claims or demands upon the part of plaintiff.

"In his answer the defendant, John P. Jaeger, denies that the defendant, Oliver P. Searing, caused the tax deed to be issued; he also denies that Searing was ever the owner of said tax deed, but that on the contrary same was obtained from the clerk of this court regularly and in the regular course of said defendant's business and occupation. He further alleges the truth to be that the execution and delivery of the special waranty deed from himself to the defendant Bauman was made without any conversation whatever, or request from defendant Oliver P. Searing.

"Based upon the pleadings and all of the testimony introduced as aforesaid, I, as master now make the following findings of fact:

"1. I find that this suit is an outgrowth of a typical boom-time transaction. The two lots were purchased on March 25, 1925, from defendant, Oliver P. Searing, by plaintiff, J. E. Healy, the consideration being $15,000.00, of which $3,500.00 was paid in cash and the balance evidenced by a purchase money mortgage and three notes each in the principal sum of $3,833.33 payable, respectively, one, two and three years after date. (See Transcript pp. 14 and 30; also plaintiff's Exhibits 11 and 12.) Some three months thereafter, under date of June 22, 1925, the lots were sold by Healy to the defendants Norwood H. Andrews and wife, the consideration being $22,500.00, of which $7,500.00 was paid in cash, the purchasers assuming the first mortgage of $11,500.00 held by Searing, and executed in favor of the seller Healy, a second mortgage of $3,500.00 to secure the payment of three notes, payable, respectively,

in equal installments, one, two, and three years after date. (See plaintiff's Exhibits 2, 3, and 4.) Afterwards the defendant, Searing, collected from the defendant, Andrews, two semi-annual interest payments aggregating $920.00, and Andrews also paid Searing $3,833.34 to take up note number 1 which, under the terms of the first mortgage, matured on March 25, 1926. (See Transcript, page 109.) Incidentally Andrews also made two semi-annual interest payments on the $3,500.00 second mortgage held by plaintiff, Healy. However, he did not pay the first principal note of $1,166.67, which matured on June 22, 1926; nor did said defendant thereafter pay any further sums on either the first or second mortgage.

"2. Nothing of consequence further transpired until the month of June, 1927, when, pursuant to appointment, plaintiff, Healy, met defendant, Searing, in the latter's Olympia Building office. The testimony relative to the facts and circumstances leading up to that meeting, and what was there said and done, is sharply in conflict. Mr. Healy testified that Mr. Searing called in his lawyer from an adjoining office, who drew up a quit-claim deed in favor of Searing which was then signed; that he, Healy, then delivered to Searing the three Andrews notes to do with as he wanted; that, in turn, it was understood that Searing was to surrender Healy's two first mortgage unpaid notes each in the principal sum of $3,833.33; but however, that Searing said he didn't have them, but would forward them later, and that he would also satisfy, of record, the first mortgage from Healy to Searing. This testimony is corroborated by that of H. V. Whitehurst who is now solicitor of record for plaintiff, though he acted as attorney for defendant, Searing, at the time the conference in question was held. At the same time, according to the testimony of Mr. Whitehurst, Healy signed and delivered to Searing the assign-

ment of the Norwood Andrews' mortgage, said assignment being in evidence as plaintiff's Exhibit No. 9. As to the actual delivery of said notes and the Andrews' mortgage given to secure the payment of same, Mr. Whitehurst testifies, positively, they were not delivered to him. That, as a matter of fact, he never saw them until years later, when they were mailed to him by a Pennsylvania attorney. (See Transcript, pp. 143-144.)

"As to what transpired at the June, 1927, conference defendant, Searing, testifies that it was agreed that the Norwood Andrews notes and mortgage would be left in the favor by J. E. Healy and wife, the payment of which had that Searing would try to get Andrews to keep the property and pay off the balance due on the Healy mortgage, or failing in that, get Andrews to deed the property to Healy, in which event Searing would extend the payments on his first mortgage over a period of five or six years. That there was no delivery of any paper from Healy to the witness, except an order for John B. Reid to deliver the abstract to Searing. However, the latter contention carries no weight, for it is undisputed that, at the time, Mr. Whitehurst was acting as attorney for Searing and that Mr. Mealy was not represented by counsel. After carefully weighing all testimony concerning this transaction the master finds the true facts to be as stated by Healy, and that it was the real intent of the parties that the Healy notes be surrendered and said plaintiff released from any further liability under the terms of the first mortgage.

"3. However, the notes referred to above were not delivered and things remained in status quo for over three years. In the meantime unpaid taxes had accumulated against the property and the circuit court clerk notified Searing that a tax deed would shortly issue. There is no doubt but that Searing used his best efforts to forestall the

issuance of this tax deed, but to no avail. The deed was in fact issued to defendant, Jaeger, on December 7, 1930. However, Jaeger was merely a dummy for Garrison Investment Company, so Searing's denial that he never met Jaeger also carries no weight. The record conclusively shows that Searing's efforts to forestall the issuance of this tax deed was carried on with Garrison's Company. In any event the tax deed was issued, but not delivered on December 7, 1930. (See Defendant's Exhibit No. 2.) On the following day the defendant, Jaeger, conveyed the property, by Special Warranty Deed to the defendant, Katharine S. Bauman. (See defendant's Exhibit No. 1.) According to the testimony of Mrs. Bauman she was advised by her brother, Oliver P. Searing, over long distance, at her home in Jacksonville, that the investment was a good one, and that she thereupon authorized him to use so much of her funds, then in his hands, as would be necessary to secure the special warranty deed. However, it is somewhat significant that neither she nor her brother remembers the actual cash consideration involved. The tax deed to Jaeger was recorded on December 26, 1930. The special warranty deed to Mrs. Bauman was not recorded until September 10, 1936.

"4. Some three years after the issuance of the tax deed the defendant, Searing, forwarded to a collection agency in Pennsylvania the two $3,833.33 notes executed in his favor by J. E. Healy and wife, the payment of which had been secured by a first mortgage on the real estate involved in this controversy. A suit styled 'Oliver P. Searing, now for the use of Henry Berman, versus J. E. Healy and Lulu Healy' was thereafter instituted in the Court of Common Pleas of the County of McKean, Pa. As a result of this action, after protracted negotiations, Healy consented to a verdict of $3,000.00, which was, one week later, under date

of September 22, 1936, satisfied of record. (See plaintiff's Exhibits numbered 7 and 8.) There were also surrendered to Healy the two first mortgage notes with a satisfaction of the first mortgage, together with the three second mortgage Andrews' notes, and the Andrews' mortgage.

"The facts being as found above, I, as Master, now make the following findings of law:

"1. I find that the defendant, Mrs. Bauman, acquired the special warranty deed, subject to all equities existing between her agent, Oliver P. Searing, and plaintiff. That when the tax deed was so purchased her said agent was not only the record owner and holder of a first mortgage encumbering these lots, but, also, actually had in his hands (or at least under his control) the second or Andrews' mortgage. Whether or not he also held a quit-claim deed from Healy is immaterial. In any event, had Searing voluntarily paid the taxes to protect his title he would certainly have been entitled to reimbursement for the amount paid. Under the facts as found above it would be highly unconscionable to find that the tax deed so acquired takes preference over the plaintiff's mortgage. I further find that the latter mortgage automatically became a first mortgage, when the defendant Searing acknowledged satisfaction of the $3,000.00 judgment, executed a satisfaction of his first mortgage, and surrendered the Andrews' mortgage and notes to plaintiff.

"2. I therefore further find that all material allegations of the Bill of Complaint are proven and true, and that the equities in this cause are with plaintiff as the owner and holder of a valid subsisting first mortgage encumbering the premises in controversy."

The master ascertained that the amount due on principal and interest up to the date of his report to be $6,655.35, that the solicitors fees to be allowed should be $500.00, plus

the cost of court and special master's fee, and concluded with the recommendation that as a condition precedent to the entry of a final decree of foreclosure the plaintiff be required to deposit in the registry of the court for the use and convenience of the defendant Katharine S. Bauman the sum of $530.12 with interest at 8 per cent from December 8, 1930, to the date of the final decree.

Exceptions to the master's report were filed by the defendant Katharine S. Bauman, widow, and Oliver P. Searing, which exceptions were overruled and final decree rendered in accordance with the recommendation made by the special master. The decree contained a paragraph adjudging and decreeing that the special warranty deed executed by John P. Jaeger and Katharine S. Bauman on December 8, 1930, in so far as the same purported to convey title to the property therein described be set aside and annulled. From this decree defendant Katharine S. Bauman took this appeal.

The first contention of plaintiff in error is that the bill was without equity and should have been dismissed because it contains no allegation of fraud on the part of Katharine S. Bauman, nor on the part of John P. Jaeger, her grantor; that she is charged with doing no act whatever except to become the grantee in a deed for property and that as to Jaeger the charge is merely that he purchased a piece of property at a tax sale and afterwards deeded it to Katherine S. Bauman, and that there is no allegation of collusion or fraud between these parties or between them and any one else.

It is further contended that under the facts set forth in the bill the purchase of said property by Searing, for his sister, from Jaeger, the consideration being paid with the funds of his sister, such payment could not be held to be a payment of taxes by Searing for the protection of his

mortgage on the property, especially in view of the fact that Searing had endeavored to prevent the issuance of a tax deed to John P. Jaeger.

It is also contended that under the circumstances set forth in the bill, as well as under the facts as proven, Searing was under no duty to pay the taxes on the property to protect his equity under his first mortgage, and that even if he were, that duty could not be charged to Mrs. Bauman, who was a stranger to all previous transactions including the mortgage on the property held by her brother; that Jaeger, a stranger to the owner of the property and a stranger to the first and second mortgagee, lawfully obtained a tax deed to the property and afterwards sold the property for a valuable consideration to another stranger, who happened to be the sister of the owner·of the first mortgage, and that the mere fact that the sister bought the property from Jaeger upon the recommendation of her brother, could not render the tax deed or the deed by Jaeger to Mrs. Bauman null and void as being a mere payment of the taxes by Searing, the holder of the first mortgage.

It is further contended that inasmuch as Mrs. Bauman took possession of the property immediately, posted it by placing four posts one on each corner of the property, and had a sign proclaiming herself as its owner and planted palm trees and shrubbery on the property from 1930 to the time the bill was filed in 1936, no suit could be maintained to deprive her of her tax title after such four years of possession.

It appears that the master based his findings, which the chancellor adopted in his final decree, upon the principles announced by this Court in Kane v. Eustis, 106 Fla. 817, 143 So. 655; Dean v. Kane, 106 Fla. 814, 143 So. 655; Clermont-Minneola Country Club, Inc., v. Loblaw, 106 Fla.

122, 143 So. 129, and Clermont-Minneola Country Club, Inc., v. Coupland, 106 Fla. 111, 143 So. 133; and Gorton v. Paine, 18 Fla. 117.

In the case of Kane v. Eustis, *supra,* we held that a tax title acquired by a second mortgagee from a third party was not paramount to the rights of the first mortgagee but that the second mortgagee was subrogated to the rights of the tax lien holder. In that case it was said by this Court speaking through Mr. Justice DAVIS:

"While in the case before us no obligation rested upon Zimmerman, as a second mortgagee, to pay the taxes on the land for the benefit of the owner, for he was simply a lien holder, and was bound neither by the law nor by his contract to pay the taxes which were the foundation of his after acquired tax title, yet the land on which his second mortgage was a lien is to be regarded as a common fund for the payment of both the first and second mortgages, which fact entitled either or both of them to redeem from the tax sale, or to accomplish the same result by buying from another the interest, if any, acquired by him under a tax deed procured for non-payment of the taxes accruing against the mortgaged land.

"Under such circumstances equity will not permit one encumbrancer to either directly, or indirectly, acquire a superior title based on a tax deed, during the pendency of his encumbrance as against another encumbrancer under either an equal or a superior encumbrance existing on the same property though the encumbrancer acquiring the tax title was neither by law nor contract bound to pay the taxes for the non-payment of which the land was sold at tax sale.

"In such cases equity will relieve against the oppression of an asserted superior tax title, whether acquired directly or indirectly, by a second mortgagee, on the principle that, as between encumbrancers, such an act in seeking to acquire

a superior title, rather than redeem from the taxes, is to be regarded as fraudulent in effect, and therefore inequitable. Fair v. Brown, 40 Iowa 209.

"In the case now before us, the court below properly ruled that the tax title attempted to be asserted by appellant was not paramount to the rights of the first mortgagee, though such tax title was acquired from a third person who quit-claimed his rights to appellant thereunder.

"But the court erred in holding that appellant Zimmerman's rights based on the tax deed were inferior and *subordinate* to the rights of the first mortgagee.

"By acquiring a quit-claim of the title conveyed under the tax deed from Elizabeth B. Dean, appellant became subrogated to her rights as a holder of a tax lien which entitled her to have precedence in the collection of her tax investment as against both the first and second encumbrancers.

"While on equitable principles a court of equity will refuse to permit a second encumbrancer to *assert* as a paramount title, rights conveyed under a tax deed acquired by him covering taxes which he was permitted to redeem from but not bound by law or contract to pay, for the benefit of the owner of the prior encumbrancer, it will likewise on equitable principles subrogate a second mortgagee, who has borne the burden of discharging the tax encumbrance, to the prior rights of the tax lien holder, and decree the amount of his outlay to be first paid out of the proceeds realized on foreclosure."

The case of Dean v. Kane, *supra,* followed the principles laid down in the case of Kane v. Eustis, *supra.* The case of Clermont-Minneola Country Club, Inc., v. Loblaw, *supra,* was a suit to foreclose a first mortgage. In that case a Mrs. Johnston purchased certain land and agreed to pay a first mortgage which encumbered the property. While the

owner of the property, Mrs. Johnston and husband contracted for the construction of roads and a golf course on the property, thereby subjecting the property to a paving lien. Afterwards Mrs. Johnston and husband conveyed the property to Coupland and wife, who agreed to pay the first mortgage and the paving lien. Subsequently, Mrs. Johnston purchased the first mortgage with her own funds and assigned it to the plaintiff corporation, which she had organized and controlled. The plaintiff corporation thus formed, in its suit to foreclose the mortgage, made the paving company one of the defendants. The latter company answered alleging fraud on the part of Mrs. Johnston in forming the dummy corporation and assigning to it the first mortgage purchased by her. The lower court held the paving lien to be an encumbrance prior to the mortgage lien sought to be foreclosed. In the opinion of this Court affirming the decree of the lower court, the case of Hartman v. Pool, 103 Fla. 858, 139 So. 589, was cited and quoted from, following which quotation this Court said:

"Upon the same theory the complainant who paid or purchased such first mortgage which she had assumed and agreed to pay, would, in a suit to foreclose it, be 'estopped to defend against' the *superiority* of such (second) mortgage' debt set up as a counter-claim, which she had likewise as owner pledged the property as security to pay.

"It is a fundamental principle of law that a person will not be permitted to do indirectly what he is not permitted to do directly. Under this principle, the property would not be permitted to escape the legal effect of the mortgage 'assignment,' for which Mrs. Johnston admits having furnished the funds, by merely having it assigned to a corporation which was apparently organized by her for the purpose of taking titles, as it does not so much depend upon the form of the transaction actually used to hinder,

delay or defraud creditors, as it does upon the relation existing between the party advancing the money, the party taking title, and the parties affected by the transaction.

"The transactions in regard to this mortgage assignment also have a bearing upon the tax certificates and tax deeds which Mrs. Johnston handled in substantially the same manner, which is submitted as the companion case now here for review upon appeal."

In the companion case of Clermont-Minneola Country Club, Inc., v. Coupland, *supra,* it was held that the general results of the grantee's purchasing with her own money tax certificates and deeds, title to which was taken in the name of a corporation organized by her for that purpose, are the same as if she took title in her own name as respects the superiority of such tax deeds over a paving lien theretofore executed by her.

Counsel for appellant has contended that the foregoing authorities are not applicable to the facts of this case. They contend first that there is no testimony to sustain the allegation in the bill that Searing caused the defendant Jaeger to obtain the tax deed to the property. This contention is correct, as shown by the record and also by the master's report on the facts. They also insist that the allegation of the bill that Searing became and is now the owner of the tax deed which was obtained in the name of Jaeger, is not borne out by the testimony. That contention is likewise correct. They also contend that Jaeger was under no duty to pay the taxes on the property owned by Andrews, neither was there any duty resting upon Mrs. Bauman to pay such taxes. This contention also is well founded.

It is further contended that the mere fact that Searing acted as agent for his sister, Mrs. Bauman, in the purchase of the property from Jaeger would not invalidate her title. This contention must be considered in the light of the

situation which the court below had before it. It is true that the evidence does not show that Searing disclosed to his sister at the time she authorized him to purchase the tax title from Jaeger that he, Searing, was the owner of a first mortgage upon the property. But it does appear from the testimony that defendant Searing was acting as the general agent of his sister in handling for her this matter of the purchase of the tax title, as he had acted in handling for her various other real estate transactions in Dade county prior to that time, she being a resident of Jacksonville, and that she had confidence in his judgment and trusted him implicitly and gave him considerable latitude in handling such matters for her.

It is contended in behalf of appellee, Healy, that if Searing was acting as agent for his sister in the procurement of the tax deed, his principal was charged with notice of Searing's interest in the property and of the equities existing between him and Healy and Andrews; that it would be inequitable for an agent's principal to assert a superior title when the principal's agent had knowledge of, and the principal was therefore chargeable with notice of, facts which would prevent the principal from claiming under a superior title. It is further argued that until the issuance of the tax deed to Jaeger and the conveyance by special warranty deed by Jaeger to Mrs. Bauman, Searing had been acting for himself and in his own behalf, and that it was not until the tax deed was about to issue that he became the agent of his sister with reference to the purchase of the tax title, she being at the time unfamiliar with the property, had never seen it and only knew of its approximate location. It is also urged that shortly before the tax deed issued Searing learned that the Garrison Investment Company for whom Jaeger was acting, had insisted upon the payment of the taxes; that at the time

Searing had a deal pending with his sister with one Graves whereby he received for his sister some money and that upon receipt of this money he, according to his own testimony, phoned his sister and wrote her that he would like to borrow it from her, to which request she consented; that he then took the money and tried to pay the taxes and gave to the circuit court clerk the required amount, $349.51. Subsequently, however, it appears from the testimony that the clerk advised Searing that the Garrison Investment Company was insisting that a tax deed, which should have issued on November 25, 1930, be issued and that he, the clerk, had been compelled to issue the tax deed. After which the clerk took the matter up with Garrison and then advised Searing that more money would be required. Searing then again telephoned his sister and, according to his testimony, he told her that "there was nothing she could do to protect this money and other moneys she had advanced to me except to take this tax deed, that it was a good piece of property, and I would advise her to purchase it, * * *." In this connection it might be noted that in his testimony (page 50 of the transcript) Healy stated that Searing had told him that he "controlled" the tax deed.

In the case of First Bond & Mortgage Co. v. Yancey, 104 Fla. 229, 139 So. 597, the second headnote reads as follows:

"Where it is clear from the evidence that the information obtained by the agent in a former transaction was so precise and definite that it is or must be present to his mind and memory while engaged in the second transaction, then the foregoing requisite becomes inapplicable; the notice given to or information acquired by the agent in the former transaction operates as constructive notice to the principal in the second transaction, although that principal was a complete stranger to and wholly unconnected with the prior

proceeding or business. The explanation of this special rule is plainly to be found in the notion that the information obtained by the agent in his former employment was of such a nature, so definite and certain, that it amounted to actual *knowledge;* and as *knowledge* it is retained by him and carried with him into the subsequent business which he transacts on behalf of his new principal. While this particular rule is settled by a strong array of authorities, the courts show a plain determination not to extend it, but to keep it confined within narrow and necessary limits."

And in the case of Enstrom v. Dunning, 124 Fla. 571, 169 So. 358, it was held that:

"Husband of mortgagee who, acting within apparent scope of his authority in making loan, had exacted a bonus which rendered loan usurious, was presumed to have acted within his actual authority and with knowledge of wife in making the usurious charge, and in absence of evidence rebutting such presumption mortgagors were entitled to relief provided by statute in cases of usurious transactions. (Comp. Gen. Laws 1927, Secs. 6937-6939.)"

The question here presented is not free from difficulty, but in view of all the circumstances disclosed by the evidence in the case we would not be authorized to reverse the decision of the lower court. While all of the allegations of Section 10 of the bill of complaint were not proven, as above pointed out, yet if the special warranty deed was obtained by Searing for his sister from the tax deed holder under such circumstances as to sustain the finding of the lower court that it was so obtained as to make it subject to the equities existing between Searing and Healy, then the conclusion of the lower court that the appellant, Mrs. Bauman, acquired the special warranty deed from the tax deed holder, subject to all equities existing between her agent Oliver P. Searing and plaintiff Healy should be af-

firmed, for then it might be said that the material and essential allegations of the bill were substantially proven. Thus in the ultimate, this case turns upon the conclusions of the chancellor from the facts and circumstances shown by the testimony and exhibits, and the reasonable and legitimate inference which might be drawn therefrom, and under the well established rule that the conclusions of the chancellor upon the facts will not be set aside in the appellate court unless manifestly erroneous, this Court would not be justified in setting aside the conclusions in the court below as evidenced by the final decree. Said decree must therefore be offirmed.

BROWN, BUFORD and CHAPMAN, J. J., concur.

TERRELL, C. J., concurs in opinion and judgment.

Justices WHITFIELD and THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

### En Banc

### ON REHEARING

BUFORD, J.—This case is again before us pursuant to rehearing granted and reargument being had.

The factual conditions are fully set out in our opinion filed in this cause on May 30, 1939, and it is, therefore, unnecessary to detail them at this time.

Confusion appears to have occurred in the lower court and in our former disposition of the cause because of the failure to properly distinguish between the status of a tax deed holder and the status of a grantee of a tax deed holder and also because of a lack of appreciation of the fact that Searing was in no way obligated to Healy to pay and discharge the mortgage from Andrews to Healy.

It appears from the record that the mortgage sought to

be foreclosed was a mortgage from Andrews, the then holder of the legal title, to Healy, which mortgage was subject to the lien of a prior mortgage from Healy, the then holder of the legal title, to Searing. The mortgage from Healy to Searing was discharged by accord and satisfaction. This made the Andrews mortgage a first mortgage lien, but the lien for taxes was a superior lien to that mortgage. The property covered by the mortgage was sold for non-payment of taxes. The tax certificates were purchased by a stranger. Searing was not liable on the Andrews mortgage to Healy. The purchaser of the tax certificate in due course, and without collusion with any of the parties, procured a tax deed. This created a new and independent title in the grantee in the tax deed. Stuart v. Stephanus, 94 Fla. 1087, 114 Sou. 767; Dean v. Kane, 106 Fla. 814, 143 Sou. 656; Cremin v. Quigley, 104 Fla. 133, 139 Sou. 383.

When the holder of a tax deed conveys the property bona fide to a third person by sufficient deed such third person is not a tax deed holder, but becomes a holder of title deraigned from a new and independent source. See Groover v. Stafford, 107 Fla. 410, 145 Sou. 252.

It is not contended that Searing ever became the holder of the tax certificate or of the tax deed. The contention is that he became the equitable owner under the deed from the tax deed holder to Mrs. Bauman.

The issuance of the tax deed extinguished all prior mortgage liens, in this case.

A different result might have obtained if Searing had acquired a tax deed while holding the mortgage from Healy. In such case Healy would have probably had the right to redeem. But Searing was not obligated on the mortgage from Andrews to Healy and, therefore, any after-acquired title by Searing did not inure to the benefit of Healy.

Therefore, the enunciations in the case of Torreyson v. Dutton (Fla.), 188 Sou. 805, are not applicable here.

While it is not material to the disposition of this case we think the record shows clearly that Mrs. Bauman was a bona fide purchaser of the title from the tax deed holder and that the tax deed holder was the bona fide holder of a new and independent title superior to and in contravention of all prior mortgage liens.

The record is clear that Searing was not at any time either legal or equitable owner of the tax deed or of any rights as a tax deed holder.

So the decree should be reversed with directions that a decree be entered in favor of appellant conforming to the views herein expressed.

So ordered.

Reversed.

TERRELL, C. J., WHITFIELD and BROWN, J. J., concur.

CHAPMAN, J., dissents.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

## Division A
### ON SECOND PETITION FOR REHEARING

PER CURIAM.—In petition for rehearing it is insisted that: "In reversing its original decree this Court overlooked and failed to consider that Oliver P. Searing *acquired a tax deed while holding the mortgage from this appellee,* and failed to consider: (a) That the tax deed in question issued on December 7, 1930. (Tr. 80.) (b) That the tax deed was delivered by the Clerk of the Circuit Court to Oliver P. Searing on December 8, 1930. (Tr. 135.) (c) That from March 25, 1925, until September of 1936, Oliver P.

Searing held a mortgage on the property. (Tr. 37, 44, 45, 129, Pltf's Exs. 11 and 12.)

"2. This Court overlooked and failed to consider that the tax deed in question *was never delivered to John P. Jaeger,* the purported purchaser, *but was delivered to Oliver P. Searing* (Tr. 135-137), and was never recorded by John P. Jaeger but was recorded by Oliver P. Searing (Tr. 135), and in so doing, this Court thereby failed to apply the rule that a tax deed takes effect from its delivery which marks the period of time when title passes from the State to the applicant, *Lance v. Smith (Fla. 1936), 167 So. 366),* and further overlooked the general rule as to conveyances that without a delivery a deed is ineffective. *Houston v. Adams, (Fla. 1923), 95 So. 859; Pratt v. Carns, (Fla. 1920), 85 So. 681; Parken v. Safford (Fla. 1904), 37 So. 567.)"*

The contentions are not sound because the record shows that no tax deed was ever issued to Searing. The tax deed was issued to a stranger to Searing and, before the tax deed was physically delivered to the grantee, the grantee in the tax deed conveyed the lands to Mrs. Bauman and authorized the Clerk of the Circuit Court to deliver his tax deed to Searing. Such delivery by the clerk was in effect delivery of the paper writing to the grantee.

Petition for rehearing denied.

TERRELL, C. J., WHITFIELD and BUFORD, J. J., concur.

BROWN and CHAPMAN, J. J., dissent.

Justice THOMAS not participating as authorized by Section 4687, Compiled General Laws of 1927 and Rule 21-A of the Rules of this Court.