48 So.2d 736 (1950)
DANIELL et al.
v.
SHERRILL et al.
Supreme Court of Florida, en Banc.
November 7, 1950.
*737 Coe & Eggart, Pensacola, for appellant, Ruth DeJarnette Daniell.
Jones & Latham, Pensacola, for appellants Lola Lee Bruington and others.
Philip D. Beall, Pensacola, and Woodrow Melvin, Milton, for appellants M.A. Touart, Jr., and others.
Richard W. Erwin, Atty. Gen., and T. Paine Kelly, Asst. Atty. Gen., for appellees.
SIMPSON, Associate Justice.
Appealed here is a decree quieting title in the plaintiffs below, Sherrill and others, as and constituting the Florida Board of Forestry and Parks, a governmental agency of the State, in and to certain lands located on Santa Rosa Island, Santa Rosa County. The property was formerly known as the "Breckenridge Grant" of 800 arpens, and the "Breckenridge and Call Grant" of 800 arpens. It was for some time known as the Live Oak Naval Reservation. The suit to quiet title was brought under Chapter 11383, Laws of Florida 1925, Sections 66.16 to 66.24, F.S.A., against certain named defendants, (appellants here), one of whom, Ruth DeJarnette Daniell was in actual possession of a portion of the property involved.
Henry M. Breckenridge acquired title to his grant from the owners under the Spanish government and title thereto was confirmed in him by the United States in 1822. Breckenridge and Richard K. Call jointly acquired title to the other tract from the owners under Spain, and their title was confirmed in them by the United States in 1822. They declared of record that they were tenants in common. The property was located in Escambia County until 1842 when Santa Rosa County was formed.
By mesne conveyances the respective titles of Breckenridge and of Breckenridge and Call were conveyed to the United States government in 1832 together with other lands.
The Santa Rosa County Court House was destroyed by fire in the year 1869 and all the County Records were burned. Samuel Z. Gonzalez and A.E. Maxwell purchased tax certificates for the years 1870, 1871 and 1872 covering the lands involved from the Santa Rosa County Clerk and thereafter acquired tax deeds from the State as grantor. The appellants (who were defendants below) are the successors in title to Gonzalez and Maxwell. They and their *738 predecessors were in possession of the property until 1933. The State of Florida and Santa Rosa County levied and assessed State and County taxes against the property involved until the year 1933, all of which were paid by the appellants and their predecessors in title.
On August 10th, 1933, an act of cession was made by the State of Florida granting exclusive jurisdiction over the property involved to the United States of America and since that date the United States has attempted to exercise control of the property by placing signs thereon. Of course, no State and County taxes were thereafter levied.
In 1947 the United States declared the property surplus and not required for Naval or Military purposes and the War Assets Administration invited bids for the sale of the property April 1st, 1947. At this sale the State Improvement Commission (another governmental agency of the State of Florida from whom the plaintiff agency secured title) submitted a bid of $100,000; F.M. Blount of Pensacola, representing the appellants, submitted a bid of $110,100; one other bid was received in the amount of $115,000 but was rejected as including both land and buildings whereas the invitation to bid included only the land. By claiming its right of preference over other bidders, the State of Florida obtained a conveyance of the property from the United States. The deeds from the United States of America, acting by and through the War Assets Administration to the Florida State Improvement Commission, and from the Florida State Improvement Commission to the plaintiff State Agency, each contained provisions restricting use of the property exclusively to public park purposes, and providing for reverter at the option of party of the first part, after sixty days notice, in the event of breach of such restriction by the party of the second part or any subsequent transferee whether caused by legal inability or otherwise. At the time of purchase the State Improvement Commission had actual notice by letter from Mr. Blount that he was bidding as agent for the appellants and that they had not relinquished their claim of ownership and title to the property. It further appears from the record that the State has not refunded or offered to refund the State taxes with respect to the land paid by the appellants and their predecessors in title.
All of the defendants filed counter-claims asserting that the plaintiffs did not come into equity with clean hands, that the plaintiffs ask equity without doing equity; that the plaintiffs are estopped to deny the title of their grantee (Gonzalez and Maxwell) and their successors in title; that the plaintiffs by treating the appellants and their predecessors as owners of the property and requiring them to pay taxes thereon, are estopped and cannot acquire title adverse to them; that any title plaintiffs acquired inures to the benefit of the appellants; that any title conveyed by the United States to the State of Florida is held by the State as trustee for the appellants. The counter-claims each allege the willingness of the appellants to pay to the State, pro rata, according to the area of their respective claims, the amount expended by the State to acquire the property claimed by them.
Certain of the defendant-appellants asserted additional rights by way of counterclaim, which are not necessary to set forth here, in view of the conclusions reached.
It was further established that in 1916 in answer to letters from F.F. Bingham (one of the appellant-defendants), the Government Land Office at Gainesville, the United States War Department and the United States Navy Department all advised Mr. Bingham that their records did not disclose any interest of the United States in the lands in question.
The case was tried before the Chancellor upon a stipulation of facts, and documentary evidence, which may be said to fairly establish the statement of facts given hereinabove. The Chancellor entered a final decree dismissing all counter-claims and quieting title in the State Board as to all the lands involved and as to the adverse claims of each of the defendants.
With respect to the several counter-claims of the appellant-defendants, the decree provided: "* * * that the several *739 counter-claims interposed and asserted by the defendants give no jurisdiction to the court to enforce the equities arising therefrom against the sovereign, which absent appropriate legislative action is immune to judicial coercion."
We proceed to a consideration of what we deem to be the controlling question raised on this appeal. Did the Chancellor correctly determine that he had no jurisdiction to enforce the equities arising from the several counter-claims against the Sovereign, "which absent appropriate legislation is immune to judicial coercion"?
It should be borne in mind that here the State has come into its courts and impleaded its own citizens and asked that title in the State be quieted against the claims and equities of those citizens. The State is the moving party: it invoked the jurisdiction of a court of equity. The Sovereign, in such a situation is bound by the maxim, "He who seeks equity must do equity", to the same extent that any citizen would be bound. It has been aptly said: "If we say with Mr. Justice Holmes, `men must turn square corners when they deal with the Government,' it is hard to see why the Government should not be held to a like standard of rectangular rectitude when dealing with its citizens." 48 Harvard Law Review, 1299. See the case of State of Iowa v. Carr, 8 Cir., 191 F. 257, 266 where the Court said:
"But the great weight of authority, the stronger reasons and the settled rule upon this subject in the courts of the United States, is that, while mere delay does not, either by limitation or laches, of itself constitute a bar to suits and claims of a state or of the United States, yet, when a sovereignty submits itself to the jurisdiction of a court of equity and prays its aid, its claims and rights are judicable by every other principle and rule of equity applicable to the claims and rights of private parties under similar circumstances.
"The equitable claims of a state or of the United States appeal to the conscience of a chancellor with the same, but with no greater or less force than would those of an individual under like circumstances. United States v. Stinson, 197 U.S. 200, 204, 205, 25 S.Ct. 426, 49 L.Ed. 724;" (and citing many other cases).
In the cited case equitable estoppel to assert title to lands was held to bar the State of Iowa.
In United States v. Stinson, 7 Cir., 125 F. 907, 910, affirmed 197 U.S. 200, 25 S.Ct. 426, 49 L.Ed. 724, the doctrine of estoppel was applied to the United States, the Court saying: "The government may not in conscience ask a court of equity to set on foot an inquiry that, under the circumstances of the case, would be an unfair or inequitable inquiry. The substantial considerations underlying the doctrine of estoppel apply to government as well as to individuals. Chope v. Detroit & H. Plank Road Company, 37 Mich. 195, 26 Am. Rep. 512; Commonwealth v. Andre's Heirs, 3 Pick. 224 [20 Mass. 224]."
This Court has repeatedly held that a tax deed vests in the Grantee a new, independent and paramount title. Hecht v. Wilson, 107 Fla. 421, 144 So. 886, Modified 145 So. 250; Bauman v. Healy, 141 Fla. 478, 193 So. 773; Torreyson v. Dutton, 137 Fla. 683, 188 So. 805, 190 So. 430.
The tax deeds here under consideration recited that there were taxes due upon the property for three years and that the State granted title to appellants' predecessors. Concededly, the tax deeds were invalid, since the United States owned the lands. The United States, or any purchaser from the United States other than the State of Florida would be entitled to challenge the validity of the tax deeds and the correctness of the recitals thereof, but, may the State acquire the title of the United States and then assert the invalidity of the State's deeds, and the untruth of the recitals thereof?
31 C.J.S., Estoppel, § 37, page 213 asserts: "As a general rule, all parties to a deed, and those claiming through them, are bound by the recitals in it legitimately appertaining to the subject matter of it. * * * Recitals of matters of fact in a deed are ordinarily binding on the grantor".
*740 Further in the same volume, § 38, at page 217: "One who executes a conveyance of land which recites that he is empowered to convey is estopped to deny such recital as effectually as if it had been an express convenant."
19 Am.Jur. 606, sets out the rule: "A grantor is generally estopped from denying the title of his grantee or his own authority to sell."
This Court in Reid v. Barry, 93 Fla. 849, 112 So. 846, 857, quoted approvingly a similar statement from 21 C.J. 1067: "A person who assumes to convey an estate by deed is estopped, as against the grantee, to assert anything in derogation of the deed. He will not be heard, for the purpose of defeating the title of the grantee, to say that at the time of the conveyance he had no title, or that none passed by the deed, nor can he deny to the deed its full operation and effect as a conveyance."
In Campbell v. Carruth, 32 Fla. 264, 13 So. 432, this Court held that a grantor was estopped from denying that there was consideration for a deed, for the purpose of defeating its effective operation as a conveyance, where the deed in question recited a consideration of $100.
Applying the cited authorities, it is our holding that, regardless of the invalidity of the tax deeds, and the untruth of their recitals, the State of Florida, the grantor therein, is estopped to question the validity of such deeds and the truth of their recitals.
We further hold, in addition to the technical or legal estoppel, that the facts in this case raise an equitable estoppel against the State. This equitable estoppel arises from the following conduct of the State:
(a) Acquiescence in the possession and improvement of the property under its conveyances for over fifty years.
(b) The levy, assessment, and collection of taxes upon the property and improvements for over fifty years.
(c) Its failure to refund or offer to refund the taxes collected although it ceded exclusive jurisdiction over the property to the United States in 1933.
See City of Winter Haven v. State, ex rel. Landis, 125 Fla. 392, 170 So. 100 (text 108); State ex rel. Attorney General v. Janesville Water Company, 92 Wis. 496, 66 N.W. 512, 32 L.R.A. 391; Farrell v. Placer County, 23 Cal.2d 624, 145 P.2d 570, 153 A.L.R. 323; State v. Broussard, 166 La. 133, 116 So. 827; U.S. v. Stinson, supra; U.S. v. Chandler-Dunbar Water Power Company, 6 Cir., 152 F. 25; State of Iowa v. Carr, supra.
Further, the State had actual notice from Mr. F.M. Blount that these appellants desired to bid and purchase the property from the War Assets Administration. Surely the State owed some duty under these circumstances to its grantees' successors in title, who were its citizens, and from whom the State had coerced the payment of taxes on this same property for many years. In the face of the appellants' bid of $110,100, the State, through its preferential rights, acquired the property for $100,000. This defeated the first opportunity the appellants had ever had to improve the title granted their predecessors by the State.
This is so, because during all the years, the appellants could not go into court against either sovereign. Now, however, as pointed out at the outset, the State has brought them into Court, where their rights and equities should not fail to appeal to the conscience of a chancellor.
Normally a title acquired by a grantor subsequent to conveyance will inure to the benefit of his grantee. And this is so whether or not covenants of warranty are contained in the deed. 19 Am.Jur. 610, 617; Tucker v. Cole, 148 Fla. 214, 3 So.2d 875; Bisby v. Walker, 185 Iowa 743, 169 N.W. 469, 171 N.W. 152. This rule applies to States as well as individuals. Wolcott v. Des Moines Nav. & R.R. Co., 5 Wall. 681, 72 U.S. 681, 18 L.Ed. 689.
Ordinarily, this occurs by operation of law without the payment of further consideration. But these appellants, in their respective counterclaims and in their brief here, have conceded that the State should not be out of pocket in the transaction, and that each should pay to the State his proportionate part of the cost *741 to the State of acquiring the title of the United States. Such a requirement is, on its face, equitable and fair, and can be worked out and enforced by the lower court. It will of course be necessary for the lower court either (1) to determine from testimony or other proofs whether or not the War Assets Administrator or his successor will claim a reverter of title under the conditions subsequent reserved in his conveyance to the Improvement Commission, or (2) to provide by its decree, that the rights of the appellants to the respective parcels claimed by them, be deferred until such time as it is determined that the reverter will not be claimed. Appellants' reply brief (page 3) asserts that no conditions were attached to the original invitation for bids, and no restriction on the use of the property for park purposes, and that these matters arose after the State failed to obtain the property after bidding $100,000. This statement is unsupported by the record, but the Chancellor below can determine its correctness or not.
Should it be determined by the Chancellor that these appellants cannot secure the title of the State because of the reverter clause, he is directed to require the State to compensate them for their respective interests in such amounts and upon such terms as shall appear just and equitable, as a sine qua non to any decree quieting title in the plaintiff State agency.
Reversed for further proceedings not inconsistent with this opinion.
SIMPSON, Associate Justice, was called to participate in this case and prepared the opinion. Since its preparation he has resigned as Circuit Judge and been appointed as U.S. District Judge, Southern District of Florida. This opinion prepared by him is approved as the Court's opinion.
TERRELL, THOMAS, HOBSON and ROBERTS, JJ., concur.
CHAPMAN, J., concurs with opinion only in order of reversal.
ADAMS, C.J., not participating.
CHAPMAN, Justice (concurring in order of reversal).
One of our decisions enunciates the principle that the doctrine of equitable estoppel, under certain conditions and circumstances, may apply to and operate upon a sovereign state. My research reflects that this ruling is in line with the holdings of many other jurisdictions. I am not convinced that this rule of equitable estoppel applies to the facts involved in this controversy. The title and ownership of the lands involved, during the period from 1832 until 1870, was in the Federal Government. The lands were erroneously placed upon the tax books for taxation purposes and during the period a tax deed or deeds issued prior to the year 1870 when the lands were owned by the Federal Government. It is quite true that possession of some of the described property was claimed or asserted under one or more of these invalid deeds. Likewise, taxes were paid for some of the years prior to 1932 or 1933.
Improvements or betterments were made upon some of the property in reliance upon the tax deeds. Equity and good conscience require a return of the value of the improvements or betterments and the amount paid over the years for taxes, with the legal rate of interest. These two items, with any other lawful item flowing from the transaction, should by the Chancellor be decreed to be paid as conditions precedent to obtaining a cancellation of the deeds as prayed for. For the above reasons I am able to concur only in the order of reversal.