118 So.2d 226 (1960)
O.H. LOBEAN, Also Known As O.H. Lobean, Appellant,
v.
TRUSTEES OF THE INTERNAL IMPROVEMENT FUND of the State of Florida, Appellees.
No. A-441.
District Court of Appeal of Florida. First District.
January 19, 1960.
Rehearing Denied March 21, 1960.
Allen & Knudsen, Fort Myers, for appellant.
Richard W. Ervin, Atty. Gen., and Ralph M. McLane, Asst. Atty. Gen., for appellee.
CARROLL, DONALD K., Acting Chief Judge.
Appellant, plaintiff below, has filed this appeal from a final decree of the Circuit Court for Leon County granting the cross-motion of the appellees, the Trustees of the Internal Improvement Fund of the State of Florida, for a summary judgment.
The facts established before the Circuit Court at the hearing on the cross-motion were: November 27, 1946, the appellees issued a Murphy Act deed to appellant, who paid therefor a consideration of $23.50, to certain submerged lands in Lee County, Florida, described as "Government Lot 1, of Section 11, Township 43 South, Range 20 East." On April 13, 1956, the appellees advertised a large area of land, including the said Government Lot 1, for sale, and the appellant brought this suit under the provisions of Section 253.14, Florida Statutes, F.S.A., to enjoin them from making such sale and from making any further attempt to convey it.
In their answer appellees admitted that they had issued the deed to the appellant in 1946, but alleged that the lands covered by that deed were then and are now submerged lands, title to which was then and is now vested in the appellees. The land in question had long before 1946 been submerged land and is today. The appellant has paid county taxes on the land for the *227 eleven years since the time he received the deed in 1946 from the appellees. The land is separated from the nearest dry land by an established channel at least six feet deep from the date of the tax deed to the present time. In the final decree appealed from, the Chancellor granted the appellee's cross-motion for summary decree and found the following:
"(1) The plaintiff admitted that the property described in the Complaint and involved in this litigation is below the mean high watermark and was below mean high watermark at the time of the levy of taxes and the issuance of Deed issued through the Trustees of the Internal Improvement Fund of the State of Florida on November 27, 1946, to O.H. LoBean.
"(2) That the use of the description Government Lot 1, Section 11, Township 43 South, Range 20 East in the Murphy Act Deed which the plaintiff received from the State of Florida, through the defendants, to describe land which was at that time submerged, makes said deed, insofar as said description is concerned, a nullity and therefore not even a basis for a legal estoppel against the defendants even though a registered surveyor with the aid of the meander line as shown by U.S.L.O. 1876 could actually determine the physical location of the area originally meandered and platted as said Lot 1.
"(3) That the instant case can be distinguished from the line of authority represented by such cases as Daniell v. Sherrill [Fla.], 48 So.2d 736, Trustees of the Internal Improvement Fund v. Bass, 67 So.2d 433 [23 A.L.R.2d 1410] and Trustees of the Internal Improvement Fund v. Claughton [Fla.], 86 So.2d 755, wherein the state was held to be equitably estopped, because although the plaintiff has paid the taxes upon the said Government Lot 1, Section 11, Township 43 South, Range 20 East, for over 11 years or since the date he received the Murphy Act deed, namely, November 27, 1946, the plaintiff admittedly has not improved this submerged land during this period. Also, the state has collected no taxes, all taxes having been county taxes."
We agree with the Chancellor that the Murphy Act deed which the appellees sold and issued to the appellant in 1946 was void and conveyed no title or interest to the appellant in the land covered thereby. The evidence is uncontradicted that the land in question is submerged land. As held by the Florida Supreme Court in State ex rel. Ellis v. Gerbing, 1908, 56 Fla. 603, 47 So. 353, 22 L.R.A.,N.S., 337, submerged lands are sovereignty lands. Sovereignty lands are not, of course, subject to taxation. See Park-N-Shop, Inc., Fla. 1958, 99 So.2d 571. Sec. 192.06, Florida Statutes, F.S.A. Since a Murphy Act deed can be issued only to holders of tax certificates, representing taxes paid on the land covered by the deed (see Chapter 18296, Laws of Florida, Acts of 1937, F.S.A. § 192.35 et seq.), a Murphy Act deed cannot legally be issued on lands not subject to taxation.
We disagree, however, with the holding of the Chancellor that there was no legal estoppel against the appellees. In our opinion this case comes squarely within the holding of the Florida Supreme Court in Daniell v. Sherrill, Fla. 1950, 48 So.2d 736, 740, 23 A.L.R.2d 1410. In that case a suit to quiet title was brought by the members of the Florida Board of Forestry and Parks, a governmental agency of the State of Florida, for and on behalf of the State. The land involved was conveyed in 1832 to the United States. Nevertheless, the State of Florida taxed this United States land. The defendants' predecessors in title had purchased tax certificates for 1870, 1871, and 1872 covering the lands in question, *228 and thereafter acquired tax deeds from the State as grantor. In 1933 an act of session was made by the State of Florida granting exclusive jurisdiction over the property involved to the United States. In 1947 the United States declared the property surplus and not needed for national or military purposes, and through the War Assets Administration sold the property to the Florida State Improvement Commission, a governmental agency of the State, which commission later sold it to the plaintiff state agency. In the suit to quiet title the Chancellor entered a final decree quieting title in the plaintiff State Board in the lands involved. This decree was appealed to the Florida Supreme Court, which said:
"19 Am.Jur. 606, sets out the rule: `A grantor is generally estopped from denying the title of his grantee or his own authority to sell.'"
After citing two earlier Florida cases and other authorities and after conceding that the tax deeds were invalid because the United States owned the land, the Court held:
"Applying the cited authorities, it is our holding that, regardless of the invalidity of the tax deeds, and the untruth of their recitals, the State of Florida, the grantor therein, is estopped to question the validity of such deeds and the truth of their recitals.

"We further hold, in addition to the technical or legal estoppel, that the facts in this case raise an equitable estoppel against the State. This equitable estoppel arises from the following conduct of the State:" (Italics supplied.)
The conduct then enumerated included, among other acts, the "levy, assessment, and collection of taxes upon the property and improvements for over fifty years."
A valuable annotation under the title of "Estoppel of United States, state, or political subdivision by deed or other instrument" is appended to the report of Daniell v. Sherrill in 23 A.L.R.2d pages 1419 to 1430. It appears from the annotation that the holding in this Florida case as to estoppel by deed is in harmony with the rule recognized in the majority of cases in other jurisdictions.
There is a clear analogy between the situation in Daniell v. Sherrill and that in the present case. There the taxes were void because assessed on lands owned by the United States, here because on sovereignty lands. In both cases the tax deeds were therefore invalid, and the State of Florida, or its agencies, should be legally estopped to question the validity of the tax deeds they had issued.
Another leading case on this subject in Florida is Trustees of Internal Improvement Fund v. Claughton, Fla. 1956, 86 So.2d 775, 789, a quieting title suit in which the Florida Supreme Court sustained the Circuit Court's finding of estoppel against the Trustees to question the validity of the plaintiff's title to subsequently filled submerged lands included in a grant made by the Trustees out of tidal lands that had been vested by a statute in the Trustees. In its discussion of the subject of estoppel against the State the Florida Supreme Court said:
"It is said in 19 Am.Jur., Estoppel, paragraph 166: `* * * an estoppel may arise against the state out of a transaction in which it acted in a governmental capacity if an estoppel is necessary to prevent loss to another and the perpetration of a fraud and if such estoppel will not impair the exercise of the sovereign powers of the state.'
"While the doctrine is not applied against the State or its subdivision as freely as against an individual, there is no doubt that it may be invoked even against the exercise of governmental powers where it is necessary to prevent manifest injustice *229 and wrongs to private individuals; provided that the restraint placed upon such governmental body to accomplish such purpose does not interfere with the exercise of governmental power. It is said for example, that, `A municipality is subject to the rules of estoppel in those cases where equity and justice require their application, and may be estopped under certain circumstances by its acts and conduct.' 19 Am.Jur., Estoppel, paragraph 168. This Court long ago recognized that estoppel may be invoked against the State. Lee v. Lang, 140 Fla. 782, 192 So. 490, 493. In the last cited case we quoted from State ex rel. Landis v. Sovereign Camp, Woodmen of the World, 131 Fla. 867, 180 So. 33, as follows:
"`"There has in times past existed some confusion in the law as to whether or not the doctrine of estoppel could be raised against the state, but as to the facts shown here, there seems no doubt that it may be done."'
"If any doubt at all remained that such doctrine could be invoked against the State or its subdivisions, that doubt was completely removed by the holding of this Court in Daniell v. Sherrill, Fla. 1950, 48 So.2d 736, 23 A.L.R.2d 1410. Later in Trustees of Internal Improvement Fund v. Bass, Fla. 1953, 67 So.2d 433, we held that although the tax assessment against lands of the Trustees of the Internal Improvement Fund there involved was not authorized by law, the then owner had been in possession for more than 11 years under such deed issued by the State and `Under such a state of facts, even if his title is not good by adverse possession, the State is estopped to question it.' The authority cited for such conclusion was Daniell v. Sherrill, supra."
The chancellor here, however, said in paragraph (2) of his final decree:
"That the use of the description Government Lot 1, Section 11, Township 43 South, Range 20 East in the Murphy Act Deed which the plaintiff received from the State of Florida, through the defendants, to describe land which was at that time submerged, makes said deed, insofar as said description is concerned, a nullity and therefore not even a basis for a legal estoppel against the defendants even though a registered surveyor with the aid of the meander line as shown by U.S.L.O. 1876 could actually determine the physical location of the area originally meandered and platted as said Lot 1."
We do not understand this to be the law in this state. If, as the Chancellor held, a registered surveyor, with the aid of an official map, could definitely determine the physical location of Government Lot 1, Section 11, Township 43 South, Range 20 East, the description in the Murphy Act deed issued to the appellant, we see no reason why the fact of such a description should preclude a legal estoppel from being raised. The Supreme Court in Daniell v. Sherrill recognized no such exception, and we see no sound reason for doing so.
Since we here hold that the appellees are legally estopped to question the validity of the Murphy Act deed they had issued in 1946 to the appellant, there is no need for us to discuss the applicability of the doctrine of equitable estoppel, which the Chancellor said was not applicable because, while the appellant had paid county taxes for over 11 years, he had not improved his submerged land. While the cases which the Chancellor cites in his final decree as holding the state to be equitably estopped did involve improvements made by the grantees, that does not necessarily mean that no equitable estoppel can exist without improvements nor that the payment of taxes for a long period of years to a county, a subdivision of the state, may not alone *230 be sufficient to raise an equitable estoppel against the state. Certainly it seems unconscionable for the state, which should set a prime example in integrity to its citizens, to sell land to one of its citizens and then several years later attempt to sell it again on the excuse that it had acted illegally in issuing the first deed. But we do not pass upon this question of equitable estoppel because we hold that the state is legally estopped.
For the foregoing reasons the final decree appealed from is reversed and the cause remanded for further proceedings consistent with the views herein expressed.
So ordered.
THORNAL and CROSBY, HAROLD B., Associate Judges, concur.