M. W. LANCE, FRANK PAUL, *et ux.*, JULIAN H. HARRIS, and W. J. FOSTER, *et ux.*, v. M. A. SMITH, as Liquidator of the State Bank of Orlando and Trust Company, an Insolvent Banking Corporation.

167 So. 366.

En Banc.

Opinion Filed March 17, 1936.

Rehearing Denied April 22, 1936.

*George P. Garrett,* for Plaintiffs in Error;

*Maguire & Voorhis,* for Defendant in Error.

ELLIS, P. J.—This was an action of ejectment brought by M. A. Smith, as Liquidator of the State Bank of Orlando and Trust Company against W. C. Lance to recover possession of Lot 9, Block "C" of Eola Park Heights in Orlando, Florida.

Plea of not guilty was interposed by Lance, W. J. Foster, and wife, Frank Paul and wife and Julian Harris. How the last named five persons became parties is not disclosed by the record. The case was tried without a jury upon stipulation of the parties which set forth certain facts.

Smith, as liquidator, succeeded W. H. Tunnicliffe in that position in February, 1933; he succeeded W. L. Tilden in February, 1930, who was appointed in August, 1929. In June, 1925, Harris and wife owned the land and executed a mortgage upon it to Wright, Warlow & Company to secure the payment of a promissory note for $5,000.00 payable in June, 1928. The note and mortgage were assigned to the Bank. In 1931 Tunnicliffe as Liquidator of the Bank

exhibited his bill in the Circuit Court to enforce the mortgage lien, obtained a decree in November, 1931, and at the sale which occurred in December, 1931, the property was purchased by the Bank acting through the Liquidator. The sale was confirmed and the Master executed a deed for the land to the Bank. A deficiency judgment for $2,133.37 was entered against Harris.

In September, 1931, the Clerk of the Circuit Court executed a tax deed to William J. and Ruth Foster conveying the land in question. The deed was based upon Tax Certificate No. 3632 issued upon the sale of the land for taxes in August, 1929, for the unpaid taxes of 1928. It was sold as the property of Julian Harris.

In 1932 the Fosters conveyed the land to Viola C. Paul.

Tax Certificate No. 3632 was issued to the State, and two years later was transferred by the Clerk to W. J. and Ruth Foster. In the month of August, 1931, the Clerk of the Court issued a notice of application by the Fosters for tax deeds based upon Tax Certificate No. 3632, describing the lot in controversy which was the property of Julian Harris, and on Certificate No. 3924, dated August, 1929, upon the "East 60 ft. of Lot 45, Highland Park Add., Plat Book D, page 94, and assessed in the name of Herbert L. Haight." The notice provided that: "Unless said certificates shall be redeeemed according to law, tax deeds will issue thereon on the 30th day of September, A. D. 1931." The notice was dated August 27, 1931.

An affidavit is attached to the notice that it was published in the Evening Reporter-Star, a newspaper published in Orange County, "Four weeks on the following dates: Aug. 28; Sept. 4, 11, 18, 25, 1931." The affidavit was made by Brossier, Business Manager of the newspaper on October 1, 1931.

The Court held the tax deed to be void because the Clerk failed to acquire jurisdiction because he failed to observe statutory requirements necessary to its issuance. The judge also held that the plaintiff was the owner of the fee simple title to the land and entitled to its possession.

A motion for a new trial was denied. Judgment was entered for the plaintiff. In the judgment entered the following recitation of the Judge's finding of fact and law was made.

"That defendant W. C. Lance is in possession of said lot and that he and his co-defendants claiming adversely refuse to deliver possession thereof to the plaintiff and claim under tax deed dated September 30, 1931; this tax deed the Court finds to be void because of failure of the clerk to acquire jurisdiction because he failed to observe statutory requirements necessary to its issuance."

A writ of error was taken to the judgment.

The tax deed was executed by the Clerk so far as the signing and sealing constituted execution of the deed on September 30, 1931. It was filed and recorded by the Clerk on October 1, 1931, at 11:55 A. M. The affidavit of publication of the notice of application for the tax deed was sworn to by Brossier on October 1, 1931.

The execution of the tax deed was witnessed by M. A. Howard. She was Deputy Clerk at the time. It was customary invariably in that office, so she swears, "to prepare the tax deed and date it as of the date stated in the notice of application for tax deed; but since the owner has a right to redeem until midnight of that date, it was also the invariable custom of the office not to deliver the tax deed until early the following morning, viz.: the morning following the date stated as the return day in the notice of application for tax deed."

She stated further: "In order that nothing else may be filed against the tax deed, the Clerk's office as an invariable custom records the tax deed, and after recording it, delivers it to the person to whom it is issued. In this matter of recording deed we act as agent for the tax deed owner. We would charge him in advance for the cost of recording. Before issuing the tax deed it is an invariable custom for the Clerk's office to have on file the proof of publication of the notice of application for tax deed. I know of no instance in which this custom has been departed from in these particulars, except within the last few months in the instance of one certain person who has applied for tax deeds. I recognize my handwriting on the face of the photostatic certified copy of the proof of publication of notice of application for tax deed where it is written 'Ch.' and then stamped 'October 1, 1931.' The word 'Ch.' was written by me on said proof of publication on October 1, 1931, and at that time said proof of publication was on file in the office of the Clerk of the Circuit Court for Orange County, Florida."

If the tax deed is valid then the plaintiff should not have recovered because the title to the land vested by that deed from the State in Viola C. Paul, lessor to Lance.

When Tunnicliffe was Liquidator of the Bank he questioned the validity of the tax deed, sought to pay the accrued taxes on the land and redeem it from the lien after the execution of the deed. The Clerk of the Court refused to accept the tender of money for that purpose and Tunnicliffe brought an action of mandamus to compel the Clerk to permit the Bank to redeem the property. The writ was quashed and Tunnicliffe took a writ of error from this Court. The judgment was affirmed "without prejudice to the relator therein to institute other proceedings which he may be advised are proper in the premises." The point de-

termined was that as the tax deed was valid on its face the Clerk could not adjudicate the validity of the proceedings which led up to the issuing of the deed. State, *ex rel*. Tunnicliffe, v. Robinson, 117 Fla. 95, 157 South. Rep. 178.

The tax deed is valid on its face, but the plaintiff now contends that it is dated before the filing in the Clerk's office of the affidavit of publication of the notice of application for the deed. The deed is dated September 30, 1931. The affidavit of publication of notice was filed in the Clerk's office on October 1, 1931, the following day, on which day the deed was recorded.

Section 1000 C. G. L. 1927, provides that no tax deed for lands sold for taxes shall *issue* until the Clerk of the Circuit Court shall have given at least thirty days' previous notice of the application for deed by publishing same once a week in some newspaper in the county, and all fees and expenses of notice shall be paid in advance by applicant for deed.

The records show that when the tax deed was signed and sealed by the Clerk the notice had been published the full time required by the above quoted section of the statute. So the purpose of the statute was fully accomplished. The owner of the land had had the full measure of notice that unless he redeemed the property from the lien of taxes the State would convey the title to the applicant for the deed. Beyond that period the owner had no right to redeem.

The case of State, *ex rel*. Comfort, v. Leatherman, 99 Fla. 899, 128 South. Rep. 21, is not in conflict with that view.

Unless Section 1002 C. G. L 1927 allows the owner of the land to redeem after the publication of the notice and before issuing of tax deed he has no authority under the statute to redeem after the full publication of the notice. The section provides that proof of the publication of such notice and the costs thereof shall be filed by the Clerk before any

tax deed shall be issued and at any time before the execution of such tax deed the owner or claimant of the land may redeem the same. The words "issuing" and "execution" used in the statutes in relation to the passing of title by a tax deed are used as interchangeable terms. It is the clear purpose of the statute that before title passes out of the State to an applicant for a tax deed the owner by complying with applicable provisions of the law may redeem the land from the lien of the tax.

But, as shown by the record in the case of State, *ex rel.* Tunnicliffe, v. Robinson, *supra,* the owner made no effort to redeem the land from the tax until January 11, 1932; three months and eleven days after the issuing of the tax deed. Unless, therefore, the tax deed was a nullity the plaintiff in this case had no authority in law to redeem the property from the tax.

The Circuit Judge reasoned that as the tax deed was dated September 30th and the proof of publication of the notice of application for the deed not filed by the Clerk until October 1st, the following day, the Clerk of the Court failed to "acquire jurisdiction because he failed to observe statutory requirements necessary" to the issuing of the deed.

Such reasoning, however, assumes that the mere preparation of a tax deed constitutes its execution or issuing by the Clerk. That assumption of fact, however, is not justified by the record, nor by the law. The delivery of the deed is the final act of its execution and marks the period or date when title passes from the State to the applicant for the deed.

It is of no consequence either to the owner or claimant of the land, that the Clerk fills out a tax deed form, signs it and attaches the seal of his office to it, but does not deliver it to the grantee. It is of no force and effect lying there in his office in his possession and under his control. It ac-

quires no vitality as a deed of conveyance until delivery and it is always proper to show by other evidence than the date of the deed when the complete act of execution, the delivery, is performed. If the claimant of the land or one seeking to redeem does not interfere before delivery and offer to pay the taxes his rights are in no wise affected by the date appearing on the face of the deed. He is barred only when the deed is delivered, which is the last official act necessary to pass title. Proof of delivery is not required to be shown by the deed itself, but may be established by parol evidence. Nor is the matter of acknowledgment or proof of the execution of the deed required to be indorsed upon it. Ellis v. Clark, 39 Fla. 714, 23 South. Rep. 410; Parken v. Saffords, 48 Fla. 290, 37 South. Rep. 567.

Without delivery a deed may be said to be at most a mere proposition to convey. Delivery has been called the life of a deed. Certainly no title passes in its absence, even though the intent to deliver is clear and failure to deliver due to accident. 8 R. C. 1, 974, Sec. 45; Parken v. Saffords, *supra;* Pratt v. Carns, 80 Fla. 243, 85 South. Rep. 681.

The recording of the deed creates a presumption of delivery which when coupled with other circumstances showing an intention to deliver the instrument to the grantee evidences an absolute delivery. Smith v. Owens, 91 Fla. 995, 108 South. Rep. 891. In that case although Mr. Justice BUFORD dissented from the judgment of affirmance he agreed that delivery of the deed is essential to the passing of title to the property. Mr. Justice WHITFIELD concurred in the views of Mr. Justice BUFORD.

There is no evidence whatsoever in the record that the tax deed was delivered before October 1, 1931, but it all established the fact that delivery of it occurred on that date

and after the filing by the Clerk of proof of publication of the notice of application.

The Circuit Judge invoked an hypothesis to support his opinion that exists neither in the statute nor the law of conveyancing and reached a conclusion that gave to the plaintiff a privilege which the statute denies to him. The plaintiff would have had no standing in court in an effort to redeem the land if the deed had not been delivered until December 31, 1931. He made no effort to redeem until more than three months elapsed after delivering and acceptance of the tax deed by Paul. The plaintiff seeks to excuse its delinquency in the matter of paying the taxes to redeem the property upon the extraordinary assumption that the date appearing in the face of the deed destroys its validity and ignored the rule that the delivery only gave vitality to the instrument. Not only was Miss Howard's testimony amply sufficient to afford proof as to when delivery occurred, but the record of the instrument by the Clerk was alone sufficient to establish evidence of its delivery.

The deed remained in the hands of the Clerk. There is nothing but assumption unwarranted by the evidence to show otherwise. His voluntary recording of it showed an intention to deliver it. Smith v. Owens, *supra*.

The point suggested that as the notice of application contained descriptions of two separate and different parcels of land owned or claimed by different people invalidated the notice, so that in law no notice of application for a tax deed was published as the statute required, therefore the deed was void, was not considered by the court.

The point is of no force because the notice required in law only the payment of the tax and expenses due on each parcel severally and not collectively in order to redeem either.

The judgment of the court is reversed.

WHITFIELD, C. J., and TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.