GILLILAND et al. v. SHUMAN.

No. 32122. June 18, 1946.

Rehearing Denied July 9, 1946.

*170 P. 2d 549.*

David A. Kline, of Oklahoma City, for plaintiffs in error.

Edgar Johnson, of Okmulgee, for defendant in error.

RILEY, J. The controlling question in this appeal is whether a resale tax deed, prepared and signed but still in the possession of the county treasurer, is executed within the meaning of 68 O.S. 1941 § 433a, which provides that the owner of any real estate sold for taxes may redeem the same from the lien resulting from the sale at any time before the execution of a deed of conveyance therefor by the county treasurer, so as to cut off the right of redemption by the owner.

The record shows that the property here involved was sold to the county in 1941 for the 1940 delinquent taxes and was sold at tax resale on May 8, 1944, to defendant in error herein, E. J. Shuman. A resale tax deed was prepared, signed, and acknowledged by the county treasurer, dated June 1, 1944. The county treasurer did not deliver the deed to the purchaser, but the purchaser did leave the money with the county treasurer to pay the recording fees, and the county treasurer, on June 5, 1944, presented the deed to the county clerk for record. After it was recorded, it was mailed to the purchaser, who, on June 22, 1944, commenced this action against E. F. Grant and Mrs. E. F. Grant, the former owners, and Callie W. Gilliland, a mortgagee, to quiet title to and for a judgment for possession of the land involved.

The former owners defended on the ground, among others, that they went to the office of the county treasurer on June 2, 1944, and inquired as to all taxes that were due on said property and offered to pay the same; that they were advised that only the taxes for 1943 were due and payable thereon, which they paid and obtained receipt therefor, after which plaintiff filed his deed for record; that defendants had no knowledge that the taxes for 1940 were not paid and they relied wholly upon said facts and circumstances and paid all taxes due as they understood and were informed. They tendered and paid into court, for the benefit of plaintiff, all taxes, penalties, interest, costs, etc.

The uncontradicted evidence sustains defendants' allegations in this regard and further shows that said defendants purchased the property in February, 1942, and were informed that all taxes on the property were paid. Notwithstanding this uncontradicted evidence, the trial court quieted title in plaintiff and entered judgment against defendants for possession of the property, and defendants appeal.

All the authorities agree that the word "execution," when used in connection with instruments conveying title to real property, and particularly deeds, connotes all acts which are necessary to the operation of the instrument, including signing, sealing when necessary, attestation and acknowledgment when required by statute, and delivery to the grantee or someone in his behalf. 16 Am. Jur. p. 488. In speaking of the execution of a deed, the element of delivery is frequently included. 18 C.J. 188. The necessity of the delivery of a deed is said to be so well recognized that citation of authorities is hardly necessary. 16 Am. Jur. 498.

"It is a general rule that it is essential to the validity of a deed that there should be a delivery of the instrument." 18 C.J. 196.

"While delivery may be by words or acts, or by both combined, and manual transmission of the deed from the grantor to the grantee is not required, it is an indispensable feature of every delivery of a deed, whether absolute or conditional, that there be a parting with the possession of it and with all power of dominion and control over it, by the grantor, for the benefit of the grantee at the time of the delivery. There is

no delivery in law where the grantor keeps the deed in his own possession with the intention of retaining it, . . . dominion over the instrument must pass from the grantor with the intent that it shall pass to the grantee, if the latter will accept it. . . . In other words, delivery may be effected by any act manifesting an unequivocal intention to surrender the instrument so as to deprive the grantor of all authority over it or of the right of recalling it; but if he does not evidence an intention to part presently and unconditionally with the deed, there is no delivery." 16 Am. Jur. 510, 511.

"It is essential to the valid delivery of a deed that the grantor part with control over it and as a general rule, it is essential that he relinquish possession although an established intent to deliver will prevail over a retention of possession and where a deed was intended to be considered as delivered it will not, as between the grantor and the grantee, be invalid for want of delivery because of the fact that it remains in the grantor's possession." 18 C.J. 200.

'Delivery of the tax deed is final act of its execution and marks period or date when title passes from state to applicant for tax deed." Lance et al. v. Smith, 123 Fla. 461, 167 So. 366.

"The recording of a deed, however, may, when coupled with other circumstances showing an intention to deliver the instrument to the grantee, evidence an absolute delivery. The delivery of a deed for record may likewise so operate where such an intention is shown, and delivery by the recording officer after it has been recorded under the direction of the grantor is sufficient." 18 C.J. 207.

It thus appears that as between the grantor and the grantee acts other than actual manual transfer of possession of the deed from the grantor to the grantee may in some cases constitute delivery. But when the rights of third persons are involved, such as the cutting off of the right of redemption by the execution of a tax deed, it is manifest that the word "execution," when used in connection with the instruments conveying title to real property, means nothing short of signing by the grantor and delivery by him to the grantee, and nothing short of this is sufficient to constitute execution of a deed.

Therefore, the deed in question was not executed within the meaning of the statute until June 5, 1944, three days after defendants went to the office of the county treasurer and inquired as to all taxes against the property and were informed by the county treasurer that only the taxes for 1943 were due and payable, and after they had paid the same.

The uncontradicted evidence, facts, and circumstances bring the defendants' case well within the rule stated in Hull v. Baxter, 195 Okla. 425, 158 P. 2d 910, wherein it is held:

"In an action to cancel a resale tax deed where nonpayment of delinquent taxes is chargeable to county treasurer's misinformation, miscalculation, or lack of information, upon inquiry of that official by owner of realty, and owner, under such misinformation, miscalculation, or lack if information, in good faith justifiably relying thereon, has made reasonably diligent effort to discharge his realty from the tax burden, any resale tax deed issued against the property so long as the owner remains in ignorance of another or greater tax burden will be treated as subject to cancellation on equitable consideration, upon full money tender."

See, also, Alexander et al. v. James, 195 Okla. 309, 157 P. 2d 456.

These cases, supported by the statute requiring tender, are in accord with the general rule stated in 61 C.J. 961.

Plaintiffs in error herein recognize, by their tender, refinements as to their liability for taxes, etc.

Complaint is made of other alleged errors, but they need not be considered. The judgment is reversed and the cause is remanded, with directions to enter judgment for defendants canceling the resale tax deed.

HURST, V..J., and OSBORN, BAYLESS, WELCH, and DAVISON. JJ., concur.