### In the Matter of BERKLEY MULTI–UNITS, INC., Debtor.

### Joseph A. GASSEN, Trustee for the Estate of Berkley Multi-Units, Inc., Plaintiff,

### v.

### UNIVERSAL BUILDING MATERIALS, INC., Defendant.

**Bankruptcy No. 85–433.**
**Adv. No. 85–398.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 4, 1985.

Robert Altman, Palatka, Fla., for trustee, Joseph Gassen.

Charles Dale & Russell Bogue, Tampa, Fla., for Universal Bldg. Materials Inc.

Joseph Gassen, Miami, Fla., trustee for Berkley Multi Units, Inc.

### ORDER ON MOTION FOR PRELIMINARY AND MANDATORY INJUNCTIVE RELIEF

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is a Motion for Preliminary Injunction, filed by Joseph Gassen, trustee of the estate of Berkley Multi-Units, Inc. (Berkley), the debtor currently involved in this Chapter 11 reorganization case. The precise matter presented for this Court's consideration is in the context of an adversary proceeding commenced by the trustee, who named Universal Building Materials, Inc. (UBM) as Defendant. The Complaint filed by the trustee seeks to avoid an unperfected mortgage lien of the Defendant, UBM, pursuant to § 544 of the Bankruptcy Code.

The trustee's challenge of the validity of the mortgage lien is directed to a mortgage lien encumbering certain real property, an Adult Congregate Living Facility located at Sea Bonae Oceanfront Inn, 2000 North Atlantic Blvd., Ft. Lauderdale, Florida. At the duly scheduled hearing, the Court heard argument of counsel for the respective parties and considered the record and, although no evidence was presented, the following undisputed facts appear from the record.

Sometime prior to January, 1985 Berkley entered into a negotiation for the purpose of acquiring the facility known as Sea Bonae Apartments. It further appears that on January 20, 1985 Berkley executed a mortgage deed in favor of UBM in the amount of $1,300,000.00 which was secured by the real property involved in this controversy. It further appears that on February 18, 1985 Berkley executed a new note in favor of UBM and the transaction was closed. Berkley filed its voluntary petition for relief under Chapter 11 on February 25, 1985. There is no question and it is without dispute that the mortgage notes were not recorded in the public records of Broward County until March 29, 1985, or thirty-nine days after closing and thirty-two days after the commencement of the case.

It further appears that UBM filed a motion and sought relief from the automatic stay in order to enforce its mortgage lien against the subject property, which mortgage, at that point, was already in default. It is without dispute that the trustee con-

sented to lifting the automatic stay and, as a matter of fact, permitted UBM to take possession of the facility and maintain it and run it pending the foreclosure action, simply because the trustee did not have the funds needed to upkeep and maintain the property. It is without dispute, although it is not specified, that while UBM was, and, in fact, still is in possession of the subject property, UBM had to spend substantial sums of money to maintain and keep up the facility.

It appears that in the pending foreclosure action a hearing was scheduled to consider UBM's Motion for Summary Judgment for November 26, 1985. In order to prevent the loss of the property, the trustee filed the Motion under consideration, seeking injunctive relief and a Complaint in which it seeks to invalidate the mortgage lien of UBM, pursuant to § 544 of the Bankruptcy Code. The claim of the trustee is based on the contention that inasmuch as the mortgage lien of UBM was not perfected on the date of the commencement of the case, the mortgage lien is unenforceable against the estate and UBM is nothing but just a general, unsecured creditor of Berkley. This is so, according to the trustee, because by virtue of the ideal judgment lien creditor status granted to the trustee by § 544(a)(1) and the status of a bona fide purchase for value granted to the trustee by § 544(a)(3), unperfected liens against properties of the estate are defeasible by the trustee.

The immediate relief sought is an injunction which, of course, requires a showing by the trustee that (1) he has a substantial likelihood of success on the merits; (2) he would suffer irreparable injury if the injunction is not granted; (3) the threatened injury to the Plaintiff outweighs the harm of an injunction to the Defendant; and (4) a preliminary injunction would not disserve the public interest. *Camenisch v. University of Texas*, 616 F.2d 127 (5th Cir.1980). See also *Virginia Petroleum Jobbers Association v. Federal Power Commission*, 259 F.2d 921, 925 (D.C.Cir.1958); *Belcher v. Birmingham Trust National Bank*, 395 F.2d 685, 686 (5th Cir.1968).

In opposition to the relief sought by the Motion, UBM takes the position, first, that the trustee's chances to succeed ultimately on the merits are nil simply because, as a matter of law, the trustee cannot avail himself to the voiding power granted by § 544. This contention is based on the claim of UBM that on the date of the commencement of this case, the subject property was not owned by Berkley and in order to be a judgment lien creditor under this section, the property on which the lien is sought to be avoided must have been owned by the debtor. In addition, UBM claims that neither does the contention that the trustee occupies the position of a bona fide purchaser for value of real estate provided for by § 544(a)(3) apply because the property was not owned by Berkley on the date of commencement of the case and if there was a purchase, it had to be a purchase of real property from the Debtor in order to utilize the status of a bona fide purchaser. *In re Minton Group, Inc.*, 27 B.R. 385 (Bankr.S.D.N.Y.1983), aff'd *Turner v. Lee (In the matter of Minton Group, Inc.)*, 46 B.R. 222 (Bkrtcy.S.D.N.Y.1985).

Next, it is the contention of UBM, based on the foregoing, that this purchase actually did not take place until after the Chapter 11 case was already in progress, that is, after the commencement of the case; that it was a purchase by Berkley, a Debtor-in-Possession, who was authorized to continue to operate its business and the acquisition of the subject property was an integral part of its operation which was to purchase and sell real estate, therefore, none of the provisions giving the voiding power to the trustee by § 544 would be available to the trustee, which powers deal only with pre-petition transactions.

In addition, it is the contention of UBM that because of the fraud of the agent of Berkley, UBM is entitled to impress a constructive trust on the subject property in order to correct this wrong. In this connection (although no evidence was presented), it is contended by UBM that the reason for the delay for the recordation was Berkley's failure to furnish the funds necessary

to purchase the necessary recording stamps to the title company, even though the money was given to the agent of Berkley, who apparently for unexplained reasons, never delivered the same to the title company and, as a result, the mortgage lien was not recorded until March 29, 1985 or substantially after the commencement of this case.

Lastly, it is the contention of UBM that in any event it would be unfair and unjust to permit the trustee now at this late stage of the game to challenge the validity of the mortgage, especially in light of the fact that the trustee consented to the lifting of the automatic stay and that in reliance on that consent, UBM commenced a foreclosure action, took possession of the property, assumed responsibility for the upkeep and maintenance of the property, and expended substantial sums of money, therefore, the trustee, on some theory, should be estopped from asserting that the mortgage lien is invalid.

Considering seriatim the various contentions advanced by UBM, it is well to state at the outset that the resolution of the merits of the first two contentions advanced by UBM would depend on a determination of the ownership of the subject property on the date of the commencement of this Chapter 11 case.

■ In the case of *Minton, supra,* the bankruptcy court held that a trustee cannot qualify as a hypothetical bona fide purchaser of real property and a trustee cannot assert the strong arm powers on behalf of an entity because the subject property at the time of the commencement of a case was not property of the debtor.

The district court, on appeal, affirmed the bankruptcy court, concluding that the property was not owned by the debtor corporation at all but was owned by the partnership of which the debtor was a general partner and, therefore, the lien could not be avoided pursuant to § 544.

The law stated in *Minton Group,* both by the bankruptcy court and the district court, no doubt represents a correct statement of interpretation of § 544. However, in this case *Minton Group* does not fur-

nish any solace to UBM, simply because in this particular instance, it is unclear whether the ownership of the property was, in fact, transferred to UBM prior to the commencement of the case or only after the commencement of the Chapter 11 case.

■ The passage of title concerning real estate is governed by local law, of course, and the law is clear in the State of Florida that the delivery of a deed by the grantor and its acceptance by the grantee consummates the deed and it is effective and operative from that date on. *Lance v. Smith,* 123 Fla. 461, 167 So. 366 (1936). There is no question that if the deed was actually delivered to Berkley prior to the commencement of the case, Berkley became the owner of the subject property even though the deed and the mortgage note was not recorded until after the commencement of the case. On the other hand, if no delivery took place and the deed was only delivered in escrow to the title company pending some further transaction consummating the particular sale, then, of course, the property was not owned by Berkley on the date of commencement of the case and, in that situation, the holding of the *Minton* case would control.

It is unclear from this record when ownership was actually transferred, in spite of the language of a letter dated April 18, 1985 addressed to Mr. George Vangeloff, Department of Health and Rehabilative Services, by Charles Dale, Jr., counsel for UBM. In this letter, counsel for UBM indicated that on February 18, 1985 UBM closed on the transfer of the subject property and the building and transferred ownership to Berkley Multi-Units, Inc.

This being the case, the contention that it is unlikely that the trustee will ultimately prevail and will be able to avoid this particular transfer is without merit.

■ Turning to the next contention of UBM, in order to defend against the injunctive relief sought, one must consider whether or not this was, in fact, a post-petition transaction, that is, was it a purchase by Berkley in the ordinary course of business. It is contended by UBM that it was the business of Berkley to buy and sell real

estate and since this transaction was not consummated fully until after the commencement of the case, this is a post-petition acquisition by Berkley and, therefore, the transfer cannot be challenged under § 544 by the trustee since § 544 deals only with unperfected security interests, liens and transfers which occurred prior to the commencement of a case. This contention is correct but, as noted above, there is nothing in this record to indicate the precise time when this transaction was consummated, therefore, the evidence, as ultimately presented, might very well establish that this was, in fact, a post-petition transaction in which event, of course, the trustee would not be able to avoid the mortgage lien claimed by UBM.

The next contention of UBM has a great appeal to the equitable sense of this Court because it is clear and it is without dispute that the trustee did, in fact, consent to the lifting of the stay; did consent to surrender possession of the property—reliance on which UBM commenced a foreclosure action, took possession of the property, and expended substantial sums of money. Moreover, it appears, although there is no competent evidence in this record and only statement of counsel, that UBM did everything in its power to conclude the transaction and the fault of non-recordation was the fault of the attorney for Berkley who apparently had the funds to procure the necessary documentary stamps and deliver the same to the title company but absconded with the funds. The fraud committed was a fraud committed by the agent of Berkley, according to UBM, and, therefore, UBM would be entitled to impress the subject property by constructive trust to the extent of the obligation represented by the mortgage note.

This argument has great appeal but shoots wide off the mark. While it is clear that UBM would be entitled to be restored to the status quo ante, i.e. to its position prior to the removal of the stay, and compensated for the expenses it incurred in reliance of the conduct of the trustee, the mortgage lien can not be resuscitated by imposition of a constructive trust and is, in fact, invalid against the trustee.

Based on the foregoing, this Court is satisfied that the trustee has met the prerequisites for injunctive relief in that the trustee has made a showing (1) that he has a substantial likelihood to succeed; (2) the estate would suffer irreparable harm if the relief is not granted; (3) the injunctive relief to the estate outweighs the harm to UBM; and (4) the injunction would not disserve the public interest.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Motion for Preliminary Injunction be, and the same hereby is, granted and UBM is prohibited from undertaking any further steps in the pending foreclosure action. It is further

ORDERED, ADJUDGED AND DECREED that the final evidentiary hearing on this cause is scheduled to be held on December 31, 1985 @ 2:00 p.m. at 700 Twiggs St., Courtroom No. 703, Tampa, Florida, unless the controversy is resolved by summary judgment.